**Clair W. BURKE, Appellee,**

v.

**DEERE & COMPANY, a/k/a John Deere Company, a Delaware Corporation, Appellant.**

**No. 92–1990.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1992.

Decided Aug. 27, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 22, 1993.

---

Richard J. Sapp, Des Moines, IA, argued (Richard J. Sapp, W. Don Brittin, Jr., Des Moines, IA, and Tim Harrington, Moline, IL, on the brief), for appellant.

Kirk T. May, Kansas City, MO, argued (Kirk T. May and Brant M. Laue, Kansas City, MO, Randy Shanks, Council Bluffs, IA,

and Jefferson D. Sellers and Jack B. Sellers, Sapalpa, OK, on the briefs), for appellee.

Bonnie J. Campbell and Craig Kelinson, Des Moines, IA, and Richard E. Mull, Ames, IA, on the brief, for amicus curiae State of Iowa ex rel. Civil Reparations Trust Fund.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

### AMENDED

BEAM, Circuit Judge.

This is a products liability case tried in federal court under diversity jurisdiction. The jury awarded plaintiff, Clair W. Burke, $650,000 for compensatory damages, and $50,000,000 for punitive damages. The compensatory damages were reduced to $390,000 under a finding of comparative fault and the punitive damages were reduced to $28,000,-000 through a district court order of remittitur. Deere & Company (Deere) appeals citing numerous trial errors. We reverse.

## I. BACKGROUND

This case is governed by Iowa law. The issues, though significant, should have been relatively uncomplicated. Unfortunately, the litigation went awry due to confusion about various theories of recovery and defense and the admissibility and use of evidence under these theories. The facts are set forth in the district court's order on Deere's motion for judgment notwithstanding the verdict, for new trial or for remittitur. *Burke v. Deere & Co.*, 780 F.Supp. 1225, 1230–34 (S.D.Iowa 1991). We will repeat them only as necessary for our discussion.

Burke was injured on November 13, 1984, when a vertical auger on a model 6620 John Deere Titan Series Combine cut his right hand. Mark Goranson, Burke's employer had purchased the combine new in 1979. Burke's injury occurred when he reached through a clean-out door in the vertical auger's housing to remove debris in the grain delivery system while preparing the combine for transfer to Deere's dealer for a design modification of the clean-out door. Goranson had turned on the auger from the operator's cab just before or just after Burke placed his hand in the combine.

At trial, the district court permitted Burke to present evidence of other accidents involving the Titan series combine and admitted evidence of post-sale and post-accident acts by Deere and its dealers. Some of the evidence showed that Deere implemented both a decal program and, later, a field-modification program after receiving several reports of injuries involving the auger. The district court submitted the issue of punitive damages to the jury.

Deere assigns error to numerous evidentiary rulings and instructions. Deere contends that: (1) the district court's admission of evidence of other accidents and evidence of post-sale conduct by Deere resulted in unfair prejudice; (2) Jury Instruction 36 erroneously instructed the jury that Iowa law imposes a continuing duty to modify or to retrofit; (3) the district court erred in submitting the punitive damages issue to the jury; (4) the punitive damages award is unconstitutional; (5) the verdict form was improper and unduly prejudicial to its case; and (6) the district court erred by permitting argument which informed the jury that a portion of any punitive damages award would be paid into a civil reparations trust fund administered by the district court.[1]

## II. DISCUSSION

### A. Overview—Theory of the Case

Before further discussing the details of this case, we find it necessary to analyze the issues framed by the pleadings and Iowa law applicable to the theories of recovery and defense. In his complaint, Burke alleged that "[a]s designed, made and sold, the machine [combine] was defective and unreasonably dangerous and was a trap and a snare to

---

1. Under Iowa Code § 668A, when punitive damages are awarded, the court must ask the jury whether the defendant's conduct was directed specifically at the plaintiff. If the jury answers in the negative, seventy-five percent of the award is paid into a civil reparations trust fund. *See infra* at 507 n. 13. In this case the jury determined by special interrogatory that Deere's conduct was not directed specifically at Burke.

the user." Appellant's appendix at 17. There were no allegations of negligent conduct on the part of Deere.

The complaint further alleged: "Deere acted wantonly, with gross disregard for plaintiff's safety and the safety of other users and plaintiff is entitled to punitive damages." *Id.* While that sentence could be construed to include an allegation of "negligent" acts by Deere, plaintiff's counsel stated at the instruction conference that "[t]his isn't a negligence case." Transcript at 2331. Later plaintiff's counsel said "plaintiff generally claims that the product is defective and unreasonably dangerous." Transcript at 2372. These statements, coupled with counsel's still later statement that "we haven't amended our complaint," transcript at 2384, establish that the plaintiff's only substantive theory of recovery in this case was strict liability in tort under Restatement (Second) of Torts § 402A (1965) (Restatement).[2]

The Iowa Supreme Court adopted section 402A of the Restatement in *Hawkeye–Security Ins. Co. v. Ford Motor Co.*, 174 N.W.2d 672, 684 (Iowa 1970). In a series of cases after *Hawkeye–Security*, including, particularly, *Hughes v. Magic Chef, Inc.*, 288 N.W.2d 542 (Iowa 1980), and *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911 (Iowa 1990), the Iowa Supreme Court established the elements of the strict liability theory and applicable defenses. For purposes of this case, Iowa Civil Jury Instruction 1000.1 adequately sets forth the elements of a claim under a strict products liability theory.[3] The requirement that the plaintiff prove the product was dangerously defective when it left defendant's control is particularly important in this case. *See* Iowa Civil Jury Instruction 1001.1(3). The combine at issue here probably left Deere's control at the time of sale. It had clearly left Deere's control at the time the decal retrofit program was completed.

■ As stated, the only theory upon which the case was tried was strict liability in tort. There were, as also stated, no allegations of negligence—specifically, there were no allegations involving a negligent failure to warn. Had such a claim been made, Iowa law on that theory, including Restatement (Second) of Torts § 388, may have been implicated.[4]

---

2. We have searched the record and find no motion to conform the pleadings to evidence on theories of recovery other than those raised in the complaint. *See* Fed.R.Civ.P. 15(b). The record is replete, however, with objections by defendant to evidence proffered by plaintiff on matters not relevant to a strict liability cause of action.

3. Iowa Pattern Jury Instruction 1000.1 provides:
**1000.1 Essentials for Recovery.** In order to recover on the claim of strict liability, the plaintiff must prove all of the following propositions:
 1. The defendant [designed] [manufactured] [assembled] [sold] (*product*).
 2. The defendant was engaged in the business of [designing] [manufacturing] [assembling] [selling] (*product*).
 3. The (*product*) was in a defective condition at the time it left defendant's control in one or more of the following ways:
 (*Set out particulars as supported by the evidence.*)
 4. The defective condition was unreasonably dangerous to the plaintiff.
 5. The plaintiff used the (*product*) in the intended manner or in a manner reasonably foreseeable by defendant.
 6. The (*product*) was expected to and did reach the plaintiff without substantial change in its condition.
 7. The defect was a proximate cause of plaintiff's damage.

 8. The amount of damage.
 If the plaintiff has failed to prove any of these propositions, the plaintiff is not entitled to damages. If the plaintiff has proved all of these propositions, the plaintiff is entitled to damages in some amount. [If an affirmative defense is submitted, delete the second sentence and insert the following: If the plaintiff has proved all of these propositions, then you will consider the defense of _____ as explained in Instruction No. _____.]
 Iowa Civil Jury Instruction 1000.1 (Iowa State Bar Ass'n 1991) (footnote omitted).

4. Section 388 of the Restatement Second of Torts provides:
 One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

While the negligence and strict liability theories seem to merge in a case alleging that a product is defective because of inadequate warning, *see, e.g., Nassif v. National Presto Indus., Inc.,* 731 F.Supp. 1422, 1424 (S.D.Iowa 1990), important distinctions remain. Liability for defective design and manufacture relates to conditions existing *at the time the product leaves the seller's control.* Restatement § 402A cmt. g (1965); *Hawkeye–Security,* 174 N.W.2d at 684; *see also Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1336 (8th Cir.1985) (under Missouri law evidence of post-sale knowledge of a defect may not be the basis for punitive damages based on inadequate warning in strict liability).

▮ In a case alleging negligent failure to warn, on the other hand, there may be a continuing duty to warn of dangers which become known after the product has entered the stream of commerce. *See, e.g.,* Iowa Code § 668.12 (the state-of-the-art defense does not diminish duty to warn concerning subsequently acquired knowledge of a defect). As Deere correctly notes, the issue of inadequate warning was a "red herring" which confused the issues, evidence and burdens of proof in this case.[5] This does not mean, however, that the issue of warnings or cautions falls out of this lawsuit.

It is undisputed that when the combine was manufactured and sold Deere provided no specific warnings or cautions concerning the dangers inherent in the auger clean-out system. The combine was fitted at the time of delivery, however, with a general warning decal that stated: "CAUTION. 1) Keep all shields in place. 2) Disengage and shut off all engine power and/or motor power before servicing or unclogging machine. 3) Keep

hands, feet, and clothing away from power driven parts." This decal was located at eye level on a toolbox twenty-six inches from the auger clean-out door. Burke testified that, prior to the accident, he had read and understood this warning, transcript at 1517–18, and had read a similar but more extensive warning in the operator's manual. Transcript at 1505. Between the time of sale and the accident, Deere began to receive reports of injuries resulting from contact with the vertical auger. Indeed, there were enough incidents that Deere instigated a "decal" program whereby additional warning or caution decals were prepared and distributed to owners of the Titan combine. The retrofit decals were to be placed directly on the grain clean-out housing. This warning retrofit program seems to have created confusion on the part of the parties and the court as they attempted to formulate jury instructions at the end of the trial.

▮ In order to establish his strict liability claim, Burke had to establish: 1) that the product had a defect and was unreasonably dangerous at the time it left Deere's hands; 2) that the dangerous defect caused the injury; and 3) damages. *See, e.g., Fell,* 457 N.W.2d at 916. A plaintiff who does not prove all of these elements is not entitled to recovery. The district court instructed the jury that the time of sale was the focal point in the defect inquiry. *See* Appellee's Appendix at 15, Jury Instruction 10. This may have been incorrect given the decal retrofit program.

The combine was sold, as indicated, without specific auger clean-out cautions. After the sale but prior to the accident, it is arguable that control of the combine was, at least constructively, returned to Deere so that the

---

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous. Restatement (Second) of Torts § 388 (1965).

5. This blurring of the two legal theories, and the concomitant misapplication and expansion of the law regarding any continuing duties in the failure to warn area, led, we believe, to the improper imposition of a duty to retrofit, as discussed *infra.* In spite of our discussion of *Restatement of Torts* Section 388, a theory of negligent failure to warn would have been very problematic under

the facts of this action. Burke does not contend that he was not warned, he admits that he saw a warning decal within a few inches of the clean-out door. He does not contend that a further or different warning would have caused him to avoid the auger, he was warned to keep his hand out of the housing and he knew from previous experience that danger lurked inside. Burke's contention was that because of the mechanical design of the combine, the machine was dangerously defective for use by human beings whatever warnings were given.

decal warning program could be completed.[6] Although these warnings did not modify the mechanical design of the combine, they addressed or could serve to negate the "unreasonably dangerous" element of the products claim as outlined in Iowa Civil Jury Instruction 1000.1(4). *See* Restatement § 402A cmt. j. ("In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning.") This warning retrofit, in essence, was intended to replace the combine in Goranson's hands with a modified design of the grain delivery system. In our view, this point in time, which was several years prior to the date of the accident, was the proper focus for the defect inquiry. ·

 The jury was instructed that "[i]f you find a warning was necessary and find that the caution decal over the toolbox was inadequate, either because of its placement or its wording, or that the danger of severe injury at the lower clean-out door was so great that no such caution decal would cure the danger or that the caution could not be followed, then you may find that the product was defective and unreasonably dangerous." Jury Instruction 14. Appellee's Appendix at 19. Contrary to Deere's assertion, the giving of this instruction does not mean that the court submitted the theory of negligent failure to warn to the jury. This instruction was, nonetheless, wrong.

This instruction permitted the jury to find that the product was defective and unreason-ably dangerous by reason of inadequate decal warning alone. The evidence does not support such a finding. Burke never contended or argued that a proper warning would have prevented his accident. His theory was adequately set forth in the second clause of Instruction 14—that "the danger of severe injury at the lower clean-out door was so great that no such caution decal would cure the danger or that the caution could not be followed, [if found], then you may find that the product was defective and unreasonably dangerous."

 Under Iowa law a product must be both "in a defective condition" and in this condition "unreasonably dangerous" to the plaintiff. *Patterson v. F.W. Woolworth Co.*, 786 F.2d 874, 878 (8th Cir.1986); Iowa Civil Jury Instruction 1001.1(3) and (4). In determining *unreasonable danger*, Deere was entitled to have the jury consider all the warnings given to Burke as well as his general knowledge and experience. Restatement § 402A cmt. j. In addition to the written warnings on the toolbox, there was evidence that Goranson had recently warned Burke not to place his hand inside the auger housing. Also, Burke testified that he had read the warnings in the operator's manual, that he was experienced with farm machinery and that he knew the general dangers that exist with regard to sudden movement of augers and the machinery parts. Instruction 14 did not give the jury any option to consider these additional matters.[7] We agree with the dis-

---

6. It was stipulated that the decal retrofit occurred in early 1981. Although Goranson denied receiving the auger clean-out warning decal, the parties stipulated that Deere mailed them, along with an accompanying letter, on April 12, 1981, to all customers who had purchased Titan combines prior to January, 1981. This would have included Goranson.

7. The dissent, *infra* at 515, cites *LaCoste v. Ford Motor Co.*, 322 N.W.2d 898, 900 (Iowa Ct.App. 1982) (per curiam), a truck transmission case, for the proposition that an "[i]nadequate warning may in fact *be* the product defect under Iowa law." (emphasis in original). The dissent also states that Deere "misleads the court" with its "open and obvious" danger argument, and contends, in faulting our criticism of Instruction 14, that the propensity for misuse of the combine to create "two-person" accidents was not open and obvious and that "it is ludicrous for Deere to have so suggested."

We have no dispute with the premise that an inadequate warning may be the defect and that such defect may make the product unreasonably dangerous. This, however, was *not* Burke's theory. Since the combine had the decal warning and he otherwise had notice of the danger, his contention was that the mechanical design of the combine made it dangerously defective, whatever warning was given. This was not a case of a truck transmission creeping into reverse without warning when not solidly placed in the parking mode, as in *LaCoste*. As we point out, there was evidence that Burke knew the dangers of sudden movement of augers on farm machinery, that you should never place your hand inside an auger housing, that the clean-out operation was to ready the combine for a factory safety retrofit and that the other person working with Burke, his employer, Goranson, had just warned him not to place his hand inside the augur housing. It is difficult to envision a situation in which the

trict court that, subject to consideration of these warnings and this knowledge and experience, the jury was entitled to ponder whether the combine was defective and unreasonably dangerous at relevant times. This inquiry, of course, would not necessarily end the case.

■ Proof of a plaintiff's conduct may also be used to attack the "proximate cause" element of a strict liability claim as described in Iowa Civil Jury Instruction 1001.1(7). Deere's allegation of "negligence" on the part of Burke was such an assault. In other words, Deere claimed that it was not a defect in the machine that caused Burke's injury but rather Burke's own negligence. Burke's alleged negligence involved the warnings received by Burke, from his employer, from the operator's manual and from the decal, as well as his general knowledge of the dangers involved in the work being done. A complete severance of the connection between the defect and injury would bar recovery.

■ Assuming, however, that the jury found both a defect that made the machine unreasonably dangerous and a causal link between the dangerous defect and Burke's injury, the inquiry is still not at an end. Deere alleged "assumption of risk" as an affirmative defense. The Iowa legislature has enacted a comparative fault statute, Iowa Code § 668 (1985). The Iowa Supreme Court eliminated "contributory negligence" as a bar to the recovery of damages arising

as a result of a defect in a product. *Hughes,* 288 N.W.2d at 544. The form of contributory negligence by the plaintiff which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of *assumption of risk,* however, has been retained as a theory of comparative fault which may bar or diminish plaintiff's recovery under section 402A. *Id.* See also *Coker v. Abell–Howe Co.,* 491 N.W.2d 143, 147 (Iowa 1992) (assumption of risk remains a defense in those actions in which contributory negligence is not available, such as strict liability). The elements of this defense are set forth in Iowa Civil Jury Instruction 1000.9.[8] This defense also involves the warning. Establishment of this defense does not, however, totally foreclose recovery by Burke. It requires a comparison of fault on the part of Burke and Deere under the Comparative Fault statute. Iowa Code §§ 668.1–668.14. Thus, the warning issue is relevant to the existence of a dangerous defect, to causation, to Deere's affirmative defense of assumption of risk and to the assessment of comparative fault.

### B. Admissibility of Post–Sale Accidents and Conduct

■ With this background in mind, we turn to the contested evidence adduced at trial. The district court admitted, over Deere's objection, evidence of other post-sale, post-decal modification accidents involving the Titan series combine.[9] Deere asserts

---

propensity for misuse was more open and obvious. The jury finding that Burke was guilty of "assumption of risk", as later defined, through the forty percent holding of comparative fault, *supra* at 501, indicates that the jurors also thought the defect was "open and obvious". The jury instructions cited by the dissent, numbers 12, 19, 24, 25, 26 and 27, do not attenuate the misleading focus of Instruction 14.

8. That pattern jury instruction provides:
**1000.9 Assumption of Risk.** The defendant claims the plaintiff voluntarily assumed the risk by:
*(Set out the particulars supported by the evidence.)*
To prove this defense, the defendant must prove each of the following propositions:
1. The plaintiff knew the [defect] [dangerous condition] was present.
2. The plaintiff understood the nature of the danger to [himself] [herself].

3. Nevertheless, the plaintiff unreasonably, freely and voluntarily used the product.
4. The plaintiff's assumption of risk was a proximate cause of plaintiff's damage.
If the defendant fails to prove any of these propositions, the defendant has not proved this defense. If the defendant has proved all of these propositions, then you will include this fault in the total percentage of plaintiff's fault you find in accordance with the special verdict submitted with these instructions.
Iowa Civil Jury Instruction 1000.9 (Iowa State Bar Ass'n 1991).

9. Deere asserts that the testimony of other accident victims, if admitted at all, should have been admitted only by way of deposition because live testimony by amputees was unduly prejudicial. We rejected this argument in *Lockley,* and reject it here. *Lockley v. Deere & Co.,* 933 F.2d 1378, 1386 n. 9 (8th Cir.1991).

that this evidence was irrelevant because it related to events which occurred years after it relinquished control and was not therefore related to Deere's liability. Evidence of other accidents is admissible if the proponent of the evidence demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. *Hale,* 756 F.2d at 1332. There is no dispute that a proper foundation for the evidence was laid in this case. Under Fed.R.Evid. 401, evidence of similar occurrences may be relevant to the defendant's notice of a defect, the magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the standard of care, or causation. *Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 613, 625 (8th Cir.1983). Here, several of the uses mentioned in *Kehm* were not at issue and Deere was willing to stipulate to both notice of other accidents and feasibility of subsequent design changes. Accordingly, it was proper to admit evidence of other post-control accidents only on the issues of defect, causation and foreseeability of use or misuse of the product.

The evidence of other accidents was used by the plaintiff and the district court, however, in submission of the question of punitive damages. The court used a verdict form which told the jury that a portion of the punitive award would go to a trust fund. In his closing argument, Burke intimated that part of the award would compensate victims of similar farm-implement accidents. This use of evidence of other post-control accidents served to enhance the award of punitive damages. This was reversible error.

Deere next asserts that the district court erroneously admitted evidence of subsequent remedial measures by Deere. This evidence related to the timing and effectiveness of Deere's field modification program and included evidence that unmodified Titan series combines were sold as late as 1988 and were seen on dealer lots in 1990.[10] There was also extensive evidence that 3100 of the Titan series combines, which were in the distribution "pipeline" at the time of a factory design change in 1982, were not modified.

 It is the law of this circuit that Rule 407 of the Federal Rules of Evidence, which prohibits the introduction of subsequent remedial measures to demonstrate the negligence or culpable conduct of the defendant, does not preclude the introduction of such evidence in strict liability cases.[11] *Donahue v. Phillips Petroleum Co.,* 866 F.2d 1008, 1013 (8th Cir.1989). *See also Unterburger v. Snow Co.,* 630 F.2d 599, 603 (8th Cir.1980); *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788, 793 (8th Cir. 1977). These cases hold that Rule 407 does not apply in strict liability cases, where by definition, negligence is not an issue. *Kehm,* 724 F.2d at 621. Thus, the existence and substance of the decal program and the factory and field modification programs are evidence of subsequent remedial measures which are relevant to the strict liability issue. *Lockley v. Deere & Co.,* 933 F.2d 1378, 1386 & n. 10 (8th Cir.1991). This proof relates, however, only to the existence of a dangerous defect in the product, and is not in any way relevant to the issue of damages.

---

**10.** Deere also contends that this evidence involves acts by dealers over which Deere has no control and that there has been no showing of agency so as to impute their actions to Deere. We need not reach this issue in light of our holding on the relevance of the evidence.

**11.** Deere urges that we abandon this minority position and join our sister circuits who hold that such evidence is not admissible. *See, e.g., Raymond v. Raymond Co.,* 938 F.2d 1518, 1522–23 (1st Cir.1991); *Chase v. General Motors Corp.,* 856 F.2d 17, 22 (4th Cir.1988); *Gauthier v. AMF, Inc.,* 788 F.2d 634, 637, *amended,* 805 F.2d 337 (9th Cir.1986); *Flaminio v. Honda Motor Co.,* 733 F.2d 463, 469 (7th Cir.1984); *Grenada Steel Indus., Inc. v. Alabama Oxygen Co.,* 695 F.2d

883, 888 (5th Cir.1983); *Hall v. American Steamship Co.,* 688 F.2d 1062, 1066–67 (6th Cir.1982); *Josephs v. Harris Corp.,* 677 F.2d 985, 990–91 (3d Cir.1982); and *Cann v. Ford Motor Co.,* 658 F.2d 54, 60 (2d Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). A panel of this court is without authority to modify the standard established in this circuit. *United States v. Lewellyn,* 723 F.2d 615, 616 (8th Cir. 1983). Only the court *en banc* is empowered to change an existing rule of law. *Id.* We note, however, that this case illustrates the dangers inherent in our present approach and further note that it may indeed be wise to revisit the issue *en banc* in a proper case.

Here, the retrofit evidence was admitted as ostensibly relevant to Deere's state of mind relating to imposition of punitive damages. Punitive damages cannot be awarded as a separate theory of recovery. Under Iowa law, punitive damages are merely incidental to the main cause of action and they are derived from the underlying cause of action. *Campbell v. Van Roekel*, 347 N.W.2d 406, 410 (Iowa 1984). In this case, as we have indicated, the underlying cause of action was strict liability in tort under section 402A of the Restatement. Accordingly, with one exception,[12] any evidence admissible on the issue of punitive damages must also have been admissible under the strict liability theory. Because any "bad conduct" by Deere for which punitive damages might be assessed must have occurred at or before the time Deere sold or attempted to retrofit the combine with the warning decal, the evidence of post-retrofit conduct was wholly irrelevant to the punitive damages issue.

We do not believe that the Iowa statute on punitive and exemplary damages, Iowa Code § 668A.1 (1987), changes this analysis.[13] That statute creates a "civil reparations trust". Seventy-five percent of any punitive damages award is paid into this fund if, in answer to a special interrogatory, the jury finds from the properly admitted evidence that "the conduct of the defendant *from which the claim arose* constituted willful and wanton disregard for the rights and safety of another [other than the claimant]." Section 668A.1(1)(a) (emphasis added). We find nothing in the statute or its legislative history that provides a claimant seeking punitive damages a roving commission to offer evidence of culpable conduct on the part of a defendant occurring subsequent to the date of relinquishing control of the product in a design defect case.[14] Under the circumstances, we find that the district court abused its discretion in admitting the bulk of the evidence concerning subsequent remedial measures.[15]

12. The exception would be information on the wealth or net worth of the defendant. This evidence is irrelevant to the issue of compensatory damages under any theory advanced.

13. The statute, in effect at the time of this action, states:

> **668A.1 Punitive or exemplary damages.**
> 1. In a trial of a claim involving the request for punitive or exemplary damages, the court shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating all of the following:
> a. Whether the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another.
> b. Whether the conduct of the defendant was directed specifically at the claimant, or at the person from which the claimant's claim is derived.
> 2. An award for punitive or exemplary damages shall not be made unless the answer or finding pursuant to subsection 1, paragraph "a", is affirmative. If such answer or finding is affirmative, the jury, or court if there is no jury, shall fix the amount of punitive or exemplary damages to be awarded, and such damages shall be ordered paid as follows:
> a. If the answer or finding pursuant to subsection 1, paragraph "b", is affirmative, the full amount of the punitive or exemplary damages awarded shall be paid to the claimant.
> b. If the answer or finding pursuant to subsection 1, paragraph "b", is negative, after payment of all applicable costs and fees, an amount not to exceed twenty-five percent of

> the punitive or exemplary damages awarded may be ordered paid to the claimant, with the remainder of the award to be ordered paid into a civil reparations trust fund administered by the state court administrator. Funds placed in the civil reparations trust shall be under the control and supervision of the executive counsel, and shall be disbursed only for purposes of indigent civil litigation programs or insurance assistance programs.
> 3. The mere allegation or assertion of a claim for punitive damages shall not form the basis for discovery of the wealth or ability to respond in damages on behalf of the party from whom punitive damages are claimed until such time as the claimant has established that sufficient admissible evidence exists to support a prima facie case establishing the requirements of subsection 1, paragraph "a".
>
> Iowa Code § 668A.1 (1987).

14. The improper admission and use of this evidence also caused undue prejudice as it related to the erroneous imposition, as discussed *infra*, of liability under a theory of negligent failure to recall.

15. On remand, the district court may admit limited evidence of subsequent remedial measures to show the existence of a defect. Evidence that relates to the imposition of punitive damages—including the timing of subsequent measures, numbers of machines retrofitted or not retrofitted, economics of field modification program, machines in field, pipeline or not yet manufactured—should not be received.

The dissent asserts that we have no basis for our observation that "retrofit evidence was admitted as ostensibly relevant to Deere's state of mind relating to imposition of punitive damages." *Infra* at 518–19. The dissent further cites the district court's statements in rulings on post-trial motions for the proposition that all "post-sale and post-accident" conduct was received only for impeachment purposes. Such contentions by the dissent are at odds with the trial record.

Colloquy between counsel and the court concerning post-accident injuries and post-accident retrofit activity, as related to punitive damages, extends over more than 1,000 pages of the record. And, as we have earlier stated, the cut-off time for such evidence for punitive damages purposes should have been at the time of sale or the time of the attempted decal retrofit.

On the first day of trial, Burke proposed evidence on post-accident retrofit activities as proof of punitive damages. Transcript at 26. On the second day of trial Burke proposed a series of post-accident witnesses as proof of "willful and wanton conduct on the part of Deere." Transcript at 121. Discussion of Burke's contention that this evidence was proof of Deere's "state of mind" in support of punitive damages continued over almost the entire time Burke offered evidence in his case-in-chief. Transcript at 57, 65, 73, 81, 121, 122, 131, 141, 143, 148, 269, 276, and 440. Deere continuously objected to the admissibility of this evidence. Transcript at 55, 129, 142, 144, 260, 271, 414, 440, 588, 641, 712, and 716. The district court overruled some of Deere's objections, Transcript at 58, 65, 81, 149, 173, and 338 and reserved ruling on other objections, Transcript at 339, 589, 893, and 1080, but permitted the jury to hear evidence on post-sale, post-decal program and post-accident retrofit activities and post-sale, post-decal program and post-accident injuries to third parties. Transcript at 342–69, 881–82, and 916–17. On the fifth day of trial, the district court stated:

We then have the problem, if that is the situation of punitive damages are going to be given, that we have to talk about and make a ruling up or down on matters that have been, for want of better designation, called alleged bad acts of Deere after the day of the Burke injury which is November the 13th, I believe, of 1984.

There's been a proffer of some things and some other arguments about it and what it ought to be and so forth, and the Court has been asking for and working with the lawyers in this regard all week long, and I had my crew working on it, and I'm persuaded now that it's not a subsequent remedial measure situation under 407, but it's more like a 404(b) question.

And as you all know, 404(b) says, in pertinent part, that "other crimes, wrongs, or acts"—"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.

\* \* \* \* \* \*

Now, the situation kind of boils down to this: The critical time in relation to Deere's frame of mind is certainly at the time of the accident of Burke.[16] Engaging that frame of mind, realizing it has to be in '84, the question is whether subsequent conduct is properly admissible in helping the jury to determine if Deere's conduct at the time of Burke's injury was committed with a willful or reckless disregard to the rights of another.... But it's going to be the ruling of the Court, I believe, although as I said I'm going to hear you out at 10 after 1:00, that the matter of later bad acts of Deere after the Burke injury will be allowed to be presented to the jury after the jury is told that the critical time is Deere's frame of mind at the time of the accident of Burke but that in order to gauge that they may consider some subsequent conduct."

---

16. This was an erroneous conclusion. As we have stated, with no duty in Iowa to recall or to recall and retrofit, under a section 402A theory, the critical time was no later than the Deere decal retrofit effort that occurred in early 1981.

Transcript at 1192–93; and 1195. The district court then permitted testimony on other post-sale, post-decal program and post-accident activities and injuries. Transcript at 1218–20, 1230–36, and 1559–76.

Thus, post-accident evidence of incidents of retrofit and injury occurring as late as 1990, some incidents involving combines purchased after prior use,[17] was indeed received as substantive proof of Deere's state of mind as it related to punitive damages. There is no indication whatsoever in the record that this evidence was admitted for impeachment purposes only.[18] In fact, this evidence was received before Deere had the opportunity to offer evidence of any kind. Thus, there were no evidentiary presentations by Deere to be impeached at these times in the trial. There was no limiting instruction that told the jury that the "critical time [was] Deere's frame of mind at the time of the accident to Burke" as outlined by the court in its ruling or that otherwise limited the use of this evidence by the jury.

### C. Jury Instruction 36—Duty to Retrofit

▇▇▇▇ Because it was an issue which, in conjunction with improperly admitted evidence and incorrect jury instructions, further confused the issues in this case, we consider the duty, if any, in Iowa, to redesign and retrofit a product. Although such a duty may exist in some jurisdictions, we find nothing to indicate that an independent cause of

---

17. There are indications in the record, Transcript at 127, that one 1990 injury offered in evidence occurred with a used combine upon which the original owner had refused modifications.

18. There was discussion at trial regarding whether impeachment might be an alternative basis for admission of some of this evidence. Transcript at 888, 894. The district court apparently abandoned this rationale in making the ruling quoted above.

19. In any event, no such theory of recovery was advanced by the pleadings in this case.

20. Burke asserts that this objection was not properly preserved for appeal. At the instruction conference, counsel for Deere stated, "we object to 36 on the ground that it is not a statement of duty." He also stated "[i]t's a portion of a Supreme Court opinion dealing with other issues" and further that "it's dicta." Transcript at 2409.

action exists in Iowa under a duty to redesign and/or retrofit.[19]

At trial Deere vehemently objected to Instruction 36, which states:

> The legal basis for punitive damages is established in product liability cases where the manufacturer is shown to have knowledge that its product is inherently dangerous to persons or property and that its continued use is likely to cause injury or death, but nevertheless continues to market the product without making timely feasible modifications to eliminate the danger or make adequate disclosure and warning of such danger.

Appellee's Appendix at 43. Deere asserts that this instruction is not supported by Iowa law and that it effectively imposes a duty to retrofit upon Deere.[20]

We agree that the instruction was erroneous under the evidence in this case. As support for the instruction, Burke relies on *Fell,* 457 N.W.2d at 919. We presume, for purposes of discussion, that Instruction 36 reflects Iowa law. However, the language used in the instruction is only a portion of a larger discussion mentioned by the Iowa Supreme Court in its reference to a definition of "willful and wanton" conduct "tailor[ed]" for use in certain products liability cases by the Florida Appeals Court. *Id.* at 919 (citing *Johns–Manville Sales Corp. v. Janssens,* 463 So.2d 242, 249 (Fla.Dist.Ct.App.1984)).[21] The

---

We find that this objection sufficiently preserved the issue for appeal.

21. That case, *Johns–Manville Sales Corp. v. Janssens,* was an asbestos case in which the evidence established forty years of affirmative suppression of information on the health hazards accompanying the use of asbestos. *Id.* This affirmative action extended for a period of time both predating and post-dating the period of asbestos exposure alleged by Janssens. *Id.* at 250. The Florida appeals court said these post-exposure acts were evidence of repetition and concealment of malicious, evil-intentioned, reckless and wanton conduct occurring after Johns–Manville initially set out to cover up the health hazards. *Id.* at 256. This cover-up, as indicated, commenced in the 1930's prior to Janssen's exposure (and probably prior to the sale of the asbestos in question). In *Chrysler Corporation v. Wolmer,* 499 So.2d 823, 826 (Fla.1986), the Florida Supreme Court reviewed the exact language from

fact that the statement in *Fell* may be a proper reflection of Iowa law and may be a proper instruction in a particular products case does not establish that it should be given in every products case, or, in this case. *Fell* flows against, rather than with, Burke's punitive damages claim. In that case, defendant Kewanee sold Fell's father-in-law a grain-handling elevator in which she became entangled. *Id.* at 913. The trial court granted Kewanee summary judgment on the issue of punitive damages and the Iowa Supreme Court affirmed. *Id.* at 920. While, as indicated, the Iowa Supreme Court noted the language used in Instruction 36 as part of a definition of "willful and wanton" conduct, the Court pointed out that there was no evidence to support the submission of a punitive claim against Kewanee based upon such conduct. *Id.* This was because there was no evidence that Kewanee knew of any similar accidents when it sold the elevator. *Id.* That is essentially the situation here. Goranson, Burke's employer, purchased the Titan combine new in September of 1979. Transcript at 1526. According to a trial stipulation, a one-person hand-injury accident was reported to Deere in August of 1979. *Burke v. Deere & Co.* 780 F.Supp. at 1230–31. The Deere Safety Committee received notice of and reviewed this accident in September of 1979. *Id.* Notice of the first two-person accident was received by Deere on February 29, 1980. *Id.* Almost immediately Deere

again convened its Safety Committee and in November of 1980, after two such two-person accidents had been reported, Deere commenced its decal retrofit program. *Id.* When accidents continued, Deere commenced the more extensive retrofit which was being undertaken at the time of Burke's accident. *Id.* at 1233. Thus, *Fell* actually detracts from Burke's contention that Instruction 36 was a proper statement of punitive damages law applicable to this litigation under the evidence adduced at trial. Surely a single, one-person accident occurring a few days prior to the sale to Goranson is not sufficient evidence of "willful and wanton conduct" toward Goranson or Burke, his employee, to support the submission of punitive damages to the jury. Indeed, *Fell* holds to the contrary.

In addition, although Instruction 36 is purportedly limited to assessment of punitive damages, we find, in light of the evidence and arguments made in this case, that the jury could easily have viewed the instruction as an invitation to impose *liability* for failure to retrofit or recall.[22] We repeat, we find no independent duty to retrofit or recall under Iowa law, and Burke did not raise this claim in his pleadings. Moreover, continuing duties appear to arise in Iowa only in the context of negligent failure to warn. Even if this were a failure to warn case, this court has stated that a duty to recall is not generally incorporated in a duty to warn. *Smith*

*Johns–Manville*, used by the district court in the present case in Instruction 36, and limited its use to asbestos cases. Significantly, this resulted in the reversal of a punitive damages award against Chrysler who was charged with having "actual knowledge" of an inherently dangerous fuel system at the time it commenced the sale of Volare automobiles in 1976 and, specifically, of having such knowledge a month prior to the sale of the vehicle to the plaintiff in that case. *Id.* The "willful and wanton" discussion in *Fell,* 457 N.W.2d at 19, was dictum because of the affirmance of nonsubmission of punitive damages. Thus, we are not at all certain that the case establishes a rule of law for claims which do not involve an ultra-hazardous product like asbestos.

**22.** The dissent contends that Instruction 36 is a proper statement of Iowa law for this case and argues that a reasonable jury could not squeeze "a duty to retrofit" from its language. You need only look to the paraphrased instruction advanced by the dissent, *infra* at 517, to refute the

dissent's contention. Although Burke sustained an injured hand and lost no appendages, the dissent's amended instruction would inform the jury that if Deere obtained knowledge, after its sale to Goranson, that other two-person accidents had resulted in a loss of arms of users, and Deere continued to sell the Titan combine to others without making satisfactory safety changes, Burke would be entitled to recover punitive damages. A subsequent sale of a combine to another person unrelated to the Burke accident had no substantive relevance whatever in this products case unless offered in support of punitive liability under a duty running in favor of Burke to fit and retrofit later sold combines. Thus, the inference that a jury might draw from Instruction 36 is clear. While we do not seek to debate the propriety of a policy creating a duty to retrofit, it is presently not the law of Iowa in a section 402A case and the existence of such a duty, should it live, was not placed in issue by the pleadings in this matter.

v. *Firestone Tire & Rubber Co.*, 755 F.2d 129, 135 (8th Cir.1985). Accordingly, it was error to give Instruction 36.

### D. Sufficiency of Evidence to Support Punitive Damages

In reviewing the sufficiency of evidence in a diversity case, we apply state law. *See, e.g., American Home Assurance Co. v. Major Tool & Machine, Inc.*, 767 F.2d 446, 447 (8th Cir.1985). Under Iowa law, we consider the evidence in the light most favorable to the plaintiff. *Larson v. Great West Casualty Co.*, 482 N.W.2d 170, 173 (Iowa App.1992). The sufficiency of plaintiff's evidence to generate a submissible jury issue is a question of law. *Id.* A reviewing court is not bound by the trial court's conclusions. *Id.* Neither are we to afford deference to the district court's interpretation of a state's law. *Salve Regina College v. Russell*, 499 U.S. 225, 231–32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

In making this determination, we again note that there is no separate cause of action for punitive damages under Iowa law and, therefore, the conduct for which punitive damages are assessed must have occurred at or prior to the time Deere surrendered control of the combine to Goranson. *See Campbell*, 347 N.W.2d at 410. Only evidence which is relevant to the conduct for which liability is imposed can support an award of punitive damages.

This court is familiar with litigation involving the John Deere Titan series combine. *See Christopherson v. Deere & Co.*, 941 F.2d 692 (8th Cir.1991) and *Lockley*, 933 F.2d 1378. We have reviewed the transcript of the *Lockley* trial and we are convinced that the evidence in this case similarly does not support submission of the issue of punitive damages to the jury.[23] *Accord Lockley*, 933 F.2d at 1390. *See also Wheeler v. John Deere Co.*, 862 F.2d 1404 (10th Cir.1988) (*Wheeler I*); *Melton v. Deere & Co.*, 887 F.2d 1241 (5th Cir.1989); and *Wheeler v. John Deere Co.*, 935 F.2d 1090 (10th Cir. 1991) (*Wheeler II*) (product liability cases involving the John Deere Titan Series combine, none of which involved an award of punitive damages).

To award punitive damages, a jury must find that the conduct *from which the claim arose* constituted willful and wanton disregard for the rights or safety of another. Iowa Code § 668A.1(1)(a). Conduct is willful and wanton when the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow. *Larson*, 482 N.W.2d at 174. An award of punitive damages is not appropriate when room exists for reasonable disagreement over the relative risks and utilities of the conduct at issue. *Id.; see also Kehm*, 724 F.2d at 623 (applying Iowa law). An award of punitive damages is particularly inappropriate where the risk defendant allegedly disregarded could reasonably have been perceived as slight. *Larson*, 482 N.W.2d at 175. Applying those principles to this case, we find no evidence of any conduct so egregious as to support an award of punitive damages. Accordingly, we find that the district court erred in submitting the issue of punitive damages to the jury.

In *Lockley*, another case involving the same model of Titan combine, we held as a matter of law that the evidence, which is substantially the same evidence as that presented in this case, was "not sufficient to show Deere acted pursuant to a calculated decision that it would likely be cheaper to be sued and pay compensatory damages to persons injured by the Titan series combines it manufactured than to take effective steps to remedy the problem."[24] *Lockley*, 933 F.2d

---

23. The dissent, *infra* at 516 n. 4, purports to detect a "distaste for punitive damages generally" on the part of the court. It is more likely that it detects a touch of incredulity at a 50 million dollar punitive award to a plaintiff found guilty of forty percent contributory fault against a defendant carrying out a second safety retrofit to remedy an open and obvious danger admittedly recognized by the plaintiff prior to the accident.

24. Much was made of the fact that this case involved evidence of "3100 of the pipeline machines"—that is, machines in the distribution pipeline after the date of factory design change which were sold without the modification—which related to the issue of punitive damages and was allegedly not presented in other Titan combine cases. At oral argument, counsel for Deere stated, without refutation, that the pipeline

at 1390. We acknowledged that "such a showing would have warranted a punitive damages award." *Id.*

The district court, in its order denying Deere's motion for judgment notwithstanding the verdict or new trial on·the punitive damages issue, relied on evidence "presented at trial [which] raised a question for the jury as to whether or not this delay [in modification] was motivated by a savings to Deere of approximately $2,700,000." and speculated on its own that "[a] delay in selling the 3,100 pipeline machines, for the purpose of modifying them, would surely have cost Deere a great deal of money." [25] *Burke,* 780 F.Supp. at 1241. The conduct on which the district court relied to justify its submission of the punitive damages issue to the jury occurred after the date of the decal retrofit program, related to knowledge acquired after this date, and is therefore irrelevant to the punitive damages issue.

■ Even if the. evidence were relevant to the underlying claim, this scant evidence of an incidental economic benefit or monetary savings simply does not amount to the type of "calculated decision-making" required to justify an award of punitive damages. Specifically, there is no evidence that Deere considered and rejected a more costly field modification program when it decided to implement the decal program at a cost of $8300 two years after the sale at issue in this case. The fact that a manufacturer undertakes a less costly alternative to remedy a perceived problem before moving to a more expensive

recall program does not amount to willful or wanton conduct in disregard of the rights and safety of others. There was no showing that Deere had any reason to believe that the decal program would not adequately solve the problem. We find no evidence of any calculated decision by Deere which would rise to the level of egregious willful, wanton conduct. Punitive damages are not awarded for conduct which is merely objectionable. *Larson,* 482 N.W.2d at 175. We thus find that evidence on the timeliness of Deere's response to accident reports is irrelevant, and even if it were relevant, it is not sufficient to justify punitive damages under Iowa law. *Accord Lockley,* 933 F.2d at 1390.[26]

### E. Verdict Form

■ Moreover, even if a punitive damages instruction were warranted, the verdict form, in combination with an improper closing argument by Burke, rendered the punitive damages award fatally defective. The jury in this case was provided with a verdict form which told them "if your answer to [a question regarding whether the conduct was directed at plaintiff] is no, a portion of the punitive damage award to be fixed by the court will be paid into a civil trust fund administered by this court." [27] Deere objected to this statement as an improper indication to the jury of the effect of their finding and as an appeal to their charitable instincts.

■ Under Iowa law, it is wholly unnecessary and generally improper for the jury to be informed of the effect of· specific.

---

combine evidence was considered in *Lockley.* Moreover, at the hearing on post-trial motions in the present case, counsel for plaintiff conceded that evidence of the 3100 pipeline machines was indeed presented in *Lockley.* Transcript of motion hearing at 141 (June 27, 1991).

**25.** We note that the combine which injured Burke was not a "pipeline" machine, so this is irrelevant.

**26.** Because we find that an instruction on punitive damages cannot be supported in this case, we need not reach the issue of whether or not the Iowa punitive damage statute meets the due process requirements set forth in *Pacific Mut. Life Ins. Co. v. Haslip,·* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), except to note, in passing, that this may be the sort of verdict that the

Supreme Court had in mind when it referred to "extreme results that jar one's constitutional sensibilities." *Id.* 499 U.S. at 1043, 111 S.Ct. at 1043. We further express concern that the trust fund component of the Iowa statute may implicate questions of standing and justiciability as well as constitutional issues of due process and excessive fines, but again, we need not reach the issue.

**27.** The statement that the district court would administer the fund is clearly a misstatement and is not authorized by the Iowa statute. This error is not of tremendous import to this decision, except that it buttresses Deere's contention that the jury likely felt it was creating an injury fund to be administered by the district court for the benefit of victims of other accidents involving farm implements, possibly including the amputees the jury had seen testify in the case.

findings on special interrogatories. *Poyzer v. McGraw,* 360 N.W.2d 748, 753 (Iowa 1985). It is also improper for counsel to direct the jury's attention to the impact of any specific findings. *Id.* In many cases, such an instruction would constitute merely harmless error, but in this case, in light of the other errors, it does not.

In closing argument, counsel for Burke argued that seventy-five percent of the punitive damages award "will go into a civil trust fund to help prevent this sort of thing in a different way" and that "75 percent will go into a special fund, a special trust fund, to be administered by the courts for others than Burke." Transcript at 2474 and 2450. Burke's counsel also mentioned the jury's "relatives, sons and fathers and people going out to do the work that this machine—unsuspecting, see, that are yet to be, the tragedies that are yet to be." Transcript at 2476. This is clearly the type of improper "golden rule" argument which is not allowed under Iowa law. *Russell v. Chicago, R.I. & P.R. Co.,* 249 Iowa 664, 86 N.W.2d 843, 848 (1957). In light of the evidence admitted in this case on other accidents, all of which involved injuries more serious than Burke's, and the improper argument by plaintiff's counsel, we are compelled to find that Deere was prejudiced. Also, the size of the verdict leads us to conclude that the jury indeed sought to create some sort of injury fund or to improperly engage in a social reallocation of resources for the benefit of parties not properly before the court.

### III. CONCLUSION

For the reasons set forth above, we find that the compensatory award cannot stand. The verdict has been tainted by the improper admission of evidence and the submission of erroneous legal theories to the jury. Although the dissent agrees that the punitive award must be reversed, it would preserve the compensatory award and remand for retrial upon only that issue. Such an approach violates the holding in *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). Upon remand, retrial on less than all the issues is permissible but only if

the issue remanded is "so distinct and separable from the others [in the trial] that a [new] trial of it alone may be had without injustice." *Id.* Thus, even if we agreed that the evidence supports submission of the case on the question of punitive damages, which we do not, a retrial to a new jury on that issue alone would be improper because the issues underlying compensatory and punitive awards are inextricably intertwined. *See, e.g., Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); *TXO Production Corp. v. Alliance Resources Corp.,* —— U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). The law is also squarely against letting a contested compensatory award stand when punitive damages are set aside, as here. Burke offered evidence on Deere's net worth and wealth in its quest for a large punitive award. Transcript at 1252–53. Such evidence is totally irrelevant to the issue of compensatory damages. "A jury may not consider a defendant's wealth in setting compensatory damages. It is ' "improper, irrelevant, prejudicial, and clearly beyond the legally established boundaries." ' " *Feld v. Merriam and Wynne, Inc.,* 506 Pa. 383, 485 A.2d 742, 748 (1984) (internal citations omitted); *see also Adams v. Murakami,* 54 Cal.3d 105, 284 Cal.Rptr. 318, 813 P.2d 1348, 1358 (1991) (stating evidence of wealth may improperly taint the jury's decision). In Iowa, evidence of a defendant's wealth is admissible only where the evidence supports exemplary damages. *Hall v. Montgomery Ward & Co.,* 252 N.W.2d 421, 424 (Iowa 1977). A large compensatory award premised on limited evidence can, in some cases, raise the question whether the jury was improperly influenced on compensatory damages by the magnitude of the wealth of the defendant. *Id.* at 426. It is prejudicial for a plaintiff to improperly introduce the question of wealth into the trial of a case involving only compensatory damages. *See, e.g., Trapalis v. Gershun,* 259 Iowa 775, 145 N.W.2d 591, 596 (1966). There was no instruction at the trial that told the jury to disregard Deere's wealth in setting the amount, if any, of compensatory damages.

We remand Burke's claim to the district court for a new trial on the issues of liability,

causation and damages. We also reverse the award of punitive damages with directions to the district court to dismiss Burke's punitive damages claim.

HEANEY, Senior Circuit Judge, dissenting.

I respectfully dissent. The majority has advanced no valid reason to justify setting aside the verdict for compensatory damages and disclosed no sound reason for holding that this record could not justify a properly instructed jury in awarding punitive damages.

I agree that the punitive damage award must be reversed, but only because plaintiff's counsel intimated in his closing argument that other victims of the defective combine would share in the award. This error, combined with the instruction informing the jury that seventy-five percent of the award would be placed in a trust fund to be administered by the district court, may well have misled the jury, causing it to award more in punitive damages than it otherwise would have awarded without the improper argument and unnecessary instruction.[1] Thus I would remand to the district court with instructions to retry the punitive damages issue.[2]

1. The district court erroneously informed the jury in Question No. 3 of the Special Interrogatories on Punitive Damages that "a portion of the punitive damage award to be fixed by the court will be paid into a civil trust fund administered by this court" if the jury found the conduct of Deere not directed specifically at Burke. Iowa Code § 668A.1 provides that at least seventy-five percent of such an award "be ordered paid into a civil reparations trust fund administered by the state court administrator." Although I do not find the present case an appropriate opportunity to resolve the question whether Iowa juries should ever be informed of the destination of such funds, I do think the erroneous information provided in the present case, along with the argument of counsel, proved prejudicial.

2. The majority argues that remand for retrial of the punitive damages issue alone would be impermissible, citing *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931). The *Gasoline Products* Court did not prohibit such a practice. It stated specifically that the Seventh Amendment does "not require that an issue once correctly determined, in accordance with the constitution-

## I. Compensatory Damages

I turn first to the decision of the panel majority to set aside the compensatory damage award of $650,000, reduced by the district court to $390,000 to reflect the jury's verdict that the plaintiff was forty percent at fault for his injuries. I have read and reread the majority opinion with respect to the compensatory damage award. The majority's only specific objection to this award is that Jury Instruction No. 14 does not correctly reflect Iowa law. The majority errs in this regard.

Jury Instruction No. 14 provided the following:

It is undisputed that there was no warning by the lower cleanout door at the time of the accident. There was a caution decal above the toolbox, which is a few feet away from the lower cleanout door.

Where an adequate warning or direction is given, the seller may reasonably assume that it will be read and heeded. A product bearing a caution or direction, which is safe for use if the caution is followed, is not in a defective condition, nor is it unreasonably dangerous.

It is admitted that when made and sold, the combine had no caution decal on the

al command, be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." *Id.* at 498, 51 S.Ct. at 514. The admonition of the Supreme Court was not to resort to partial remand except in cases in which "the issue to be retried is so distinct and separable from the others that retrial of it alone may be had without injustice." *Id.* at 500, 51 S.Ct. at 515. That is precisely the situation we have in this products liability case based on strict liability. The jury already has properly decided—as have the juries in the other cases involving this combine—that the Deere combine at issue was defective and unreasonably dangerous as designed, manufactured, and sold by Deere. Whether Deere acted with willful and wanton disregard of the rights or safety of another is distinct from the *existence* of the defect; rather, it concerns Deere's knowledge or awareness of that defect and its actions or inactions in consideration of that knowledge. It is an issue that is entirely separable from the question whether the product was defective and unreasonably dangerous. Thus, retrial on the issue of punitive damages alone may easily be had in this case without injustice.

auger housing. If you find a warning was necessary and find that the caution decal over the toolbox was inadequate, either because of its placement or its wording, or that the danger of severe injury at the lower cleanout door was so great that no such caution decal would cure the danger or that the caution could not be followed, then you may find that the product was defective and unreasonably dangerous. If you do not so find, then you may find that the product was not defective or unreasonably dangerous.

At trial, Deere objected to the third paragraph of this instruction, then without the last sentence, as "surplusage" and as commenting on evidence favorable to the plaintiff. Tr. at 2378. On appeal, Deere repeats its trial objection and argues further that the instruction failed to instruct on an open and obvious danger defense and that it confuses two theories of recovery: "Because the failure to warn claim was submitted with the defective design theory, it is not possible to determine on which basis the jury found Deere liable." Appellant's Brief at 44.

Deere misses the dispositive Iowa law on this point. Under Iowa strict liability law, "a product, although faultlessly made, may nevertheless be deemed defective so as to subject the manufacturer to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning." *LaCoste v. Ford Motor Co.*, 322 N.W.2d 898, 900 (Iowa Ct.App.1982) (per curiam). Inadequate warning may in fact *be* the product defect under Iowa law; it need not be a separate cause of action.

Deere further misleads the court by arguing that the instruction should have included the defense that the danger of an auger is open and obvious. The majority also appears to subscribe to this position. Both miss the point: The Deere combine was not unreasonably dangerous because it utilized an auger; it was unreasonably dangerous because of the "alarming propensity for misuse . . . in the absence of a proper warning."

*LaCoste*, 322 N.W.2d at 901. That alarming propensity for misuse in the two-person accident that occurred here is *not* open and obvious, and it is ludicrous for Deere to suggest it was: Indeed, if that alarming propensity for misuse were open and obvious to Deere, it should have corrected it forthwith. The score of accidents occurring on this same combine in nearly identical circumstances proves that unreasonably dangerous defect.[3]

The majority further errs when it concludes that "[t]his instruction permitted the jury to find that the product was defective and unreasonably dangerous by reason of inadequate decal warning alone." *Supra* at 504. As noted above, an inadequate warning may indeed render a product defective and unreasonably dangerous, but the jury in this case *first* had to find that the "warning was necessary" because of the inherent danger of the product. Only after it found that a suitable warning was necessary could it find Deere's decal inadequate—and only then could it find the combine defective.

The majority also finds that Instruction 14 did not give the jury any option to consider additional matters such as all the warnings given to Burke and his general knowledge and experience. *Id.* The jury was, however, properly instructed to consider assumption of risk, comparative fault, Burke's awareness of the danger of the product, proximate cause, and warnings disregarded by Burke. *See* Jury Instructions Nos. 12, 19, 24, 25, 26, and 27. When reviewing the charge to a jury, "[a]ll instructions must be read and construed together, not piecemeal or in artificial isolation." *Sanders v. Ghrist*, 421 N.W.2d 520 (Iowa 1988); *accord Grogan v. Garner*, 806 F.2d 829, 836 (8th Cir.1986). I believe that the instructions as a whole fairly and adequately presented the substantive Iowa law in this case and were neither misleading nor confusing. The jury's compensatory award reflects its own apt understanding of the case. It found Burke forty percent re-

**3.** The majority does not dispute that inadequate warning may render a product defective and unreasonably dangerous under Iowa law. It responds only that this "was not Burke's theory." *Supra* at 504 n. 7. Burke's "theory" was strict liability in tort for the design, manufacture, and sale of a defective and unreasonably dangerous product. Iowa law allows him to recover for his injuries caused by that product, and Instruction No. 14 quite correctly reflects that law.

sponsible for his injuries, and there has been no suggestion that the award was excessive.

In a final, conclusory effort to strengthen its argument with respect to the reversal of the compensatory damage award, the majority states that the compensatory verdict was "tainted by the improper admission of evidence and the submission of erroneous legal theories to the jury." *Supra* at 513. It is difficult to respond to such a generalized allegation except to point to its lack of substance and to reiterate that there was no confusion about evidence or legal theories in the district court during this trial. This case was the second time that the same product, injury, and issues have been tried before the same judge and with representation by the same lawyers. True, the plaintiff and the jury are different, but this jury was not naive: it had the benefit not only of very well versed counsel and court, but even took a trip to the field to study this combine up close and ask questions.

I would add that the majority's opinion extends an open invitation to Burke to amend his case on remand to include theories of recovery under negligence, and what was once rather a simple case on compensatory damages could evolve into something a good deal more complicated, but with the end result likely being about the same as it was here.

## II. Punitive Damages

The panel majority finds several reasons to set aside the punitive damage award: It finds error in a jury instruction, prejudice in several evidentiary rulings, impropriety in closing argument, and insufficient evidence to support any such award in the first place.[4] I believe all but one of the majority's findings are without merit. As I stated above, I would remand to the district court for a retrial on the punitive damage award because I think counsel's closing argument and the

unnecessary instruction from the district court may have prejudicially affected the award. To deny Burke any opportunity to submit the punitive damages issue to the jury is to ignore Iowa punitive damage law, which is fully consistent with decisions of the United States Supreme Court.

### A. *Jury Instruction No. 36*

The majority's analysis unfortunately goes awry because of considerable confusion about Jury Instruction No. 36 and the applicable Iowa law. Instruction 36 provided that

> [t]he legal basis for punitive damages is established in product liability cases where the manufacturer is shown to have knowledge that its product is inherently dangerous to persons or property and that its continued use is likely to cause injury or death, but nevertheless continues to market the product without making timely feasible modifications to eliminate the danger or make adequate disclosure and warning of such danger.

With the exception of the word "timely," this instruction is a verbatim quote from *Fell v. Kewanee Farm Equip. Co.*, 457 N.W.2d 911, 919 (Iowa 1990) (en banc). The *Fell* court quoted this language with approval as a proper definition of "willful and wanton disregard for the rights or safety of another" in the context of products liability cases. *Id.* The majority, presumably applying Iowa law, now concludes that the Iowa Supreme Court, sitting *en banc*, should have narrowed its analysis.

Deere objected to this instruction at trial because "it is not a statement of duty"; because "it was some dicta, quoting from other treatises"; because there was insufficient evidence for its submission; and because "[i]t's argumentative and it suggests a plaintiff's theory." Tr. at 2409–11. Deere's new and improved argument on appeal is that Instruction 36 "miscomprehends and misapplies lan-

---

4. The majority's opinion appears to manifest a distaste for punitive damages generally. I note for the record that such awards, firmly rooted in our common law for well over a century, are perfectly proper in an appropriate case and offend neither Iowa law nor the United States Constitution. *See, e.g., TXO Production Corp. v. Alliance Resources Corp.*, —— U.S. ——, 113 S.Ct.

2711, 125 L.Ed.2d 366 (1993). Recent empirical study, moreover, has debunked the mythology of "skyrocketing awards," "runaway juries," and "competitive disadvantage" too often erroneously associated with such awards. *See, e.g.,* Michael Rustad, *In Defense of Punitive Damages in Products Liability: Testing Tort Anecdotes with Empirical Data*, 78 Iowa L.R. 1 (1992).

guage from *Fell.*" Appellant's Brief at 33. Finally, at oral argument, the objection was further transformed to state that Instruction 36 erroneously creates a "duty to retrofit" in Iowa law.[5]

The majority, declining to choose an objection, states only that "[w]e agree that the instruction was erroneous under the evidence in this case." *Supra* at 509. The majority's analysis misstates the holding from *Fell* to conclude that this case, like *Fell*, is one in which the evidence was insufficient to present a punitive damages question to the jury. The *Fell* court was explicit about why the evidence was insufficient in that case:

> This is not a case in which [the manufacturer] knew that people were being injured by exposed gears and ignored this knowledge for economic reasons. To the contrary, the evidence shows that [the manufacturer] manufactured and sold thousands of these elevators without a similar accident occurring. Simply put, risk of injury from exposed beveled gears on the elevators was not so great as to make it highly probable that an injury would occur.

*Fell*, 457 N.W.2d at 920. In the instant case, the risk of injury from the combine defect was sufficiently great to make it highly probable that injuries would occur; at least twenty-six injury-producing accidents did occur, most of which were nearly identical to Burke's; and there is evidence that Deere knew of the defect and the injuries, but put off a costly retrofit program until the accident reports became increasingly common. Therefore, I conclude that under Iowa law, the district court did not err in sending the question of punitive damages to the jury with Instruction No. 36.

The majority also concludes that "although Instruction 36 is purportedly limited to assessment of punitive damages, we find ... that the jury could easily have viewed the instruction as an invitation to impose *liability* for failure to retrofit or recall." *Supra* at 510. Although not entirely clear, this may be what the majority refers to in its vague discussion of "erroneous legal theories" alluded to above in my discussion of compensatory damages. I cannot agree with the majority's conclusion. First, the instruction unambiguously states that it concerns the legal basis for *punitive* damages. Second, the Supreme Court of Iowa does not imply a "duty to retrofit" in the language used; nor do I see how a reasonable jury could squeeze such a meaning from the straightforward language. Rather, it allows a jury to find willful and wanton disregard for the rights and safety of another if a manufacturer continues to sell a product it knows to be dangerous without making appropriate feasible modifications or adequate warnings. The same instruction could have been worded differently in this case without changing its meaning:

> The legal basis for punitive damages is established in this case if Deere is shown to have knowledge that its combine is removing farmers' arms and that its continued use is likely to continue to remove farmers' arms, but nevertheless continues to sell the combine without making feasible changes to eliminate the danger of limb removal or at least adequately warning farmers of the danger.

I agree with the Iowa Supreme Court that such an instruction fairly defines "willful and wanton disregard for the rights or safety of another" in the context of products liability.[6] I find no error in the instruction.

---

**5.** The majority finds that the issue of a duty to retrofit was sufficiently preserved for appeal. *Supra* at 509 n. 20. The majority ignores the applicable federal rule: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, *stating distinctly the matter objected to and the grounds of the objection.*" Fed.R.Civ.P. 51 (emphasis added); *accord Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 824 (8th Cir.1983). Further, "[a] party may not state one ground when objecting to an instruction and attempt to rely on a different ground for the

objection on appeal or on a motion for a new trial." 9 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2554 (1971); *accord Siegfried v. Kansas City Star Co.*, 298 F.2d 1, 7 (8th Cir.) ("It is apparent that the objection now raised is somewhat different from that raised in the trial court, and hence the criticism of the instructions now made is not properly before us for consideration."), *cert. denied*, 369 U.S. 819, 82 S.Ct. 831, 7 L.Ed.2d 785 (1962).

**6.** The Iowa Supreme Court's approval of awarding punitive damages in cases described by the language in *Fell* is not unique. The Alaska Su-

### B. *Sufficiency of Evidence*

The majority's theory of this case concludes that the focal point of the defective product inquiry is not the time of sale, but after the caution decal was affixed to the combine. Deere not only does not raise this issue, but vigorously argues that the focal point of the defective product inquiry must be the time of sale. Deere's position is understandable, for by moving up the focal point of the defect inquiry to sometime after the implementation of the decal program, the majority also moves up the threshold of the punitive damages analysis (under its own restrictive theory) to a time when Deere had greater knowledge of the danger of its product and specific notice that the product was removing body parts from unwary farmers in the field.

Thus, even if one accepts the majority's ruling that all evidence admissible to prove willful and wanton conduct by Deere must have occurred at or before surrendering control of the combine—and I do not accept that unsupported ruling—then a submissible jury question on punitive damages still is presented by the evidence.

Deere did not mail the caution decal at issue to prior purchasers of the combine until April 1981. But Deere had notice of the first accident occurring with this combine in August 1979. It received another accident notification in February 1980, another in September 1980, and yet another in December 1980. Deere's Product Safety Committee had suggested a caution decal at a meeting as early as September 1979, and it recommended that the Design Division review the combine for possible changes in April 1980. Despite the timely suggestions of the Product Safety Committee, Deere management dragged its feet until accident reports became increasingly common. And even then, a year after design modifications were first suggested, the decision was made to mail out

an inadequate and ineffective caution decal. Evidence also was introduced that Deere held a clinic for custom combiners in March 1981 in Wichita, Kansas, in which it overlooked informing the clinic participants of the danger of the combine design or of the accident reports.

A submissible jury issue for the question whether punitive damages should be awarded under Iowa law need only raise a material question of fact regarding whether Deere had knowledge that its combine was causing serious injuries and that its continued use was likely to continue to cause injuries, but nevertheless continued to market the combine without making feasible changes to eliminate the danger or at least adequately warning of the danger. *Accord Fell,* 457 N.W.2d at 919. All the evidence outlined above would be admissible even under the majority's overly restrictive theory of punitive damages under strict liability. I believe it is sufficient evidence to send that issue to the jury in this case. I would remand to the district court with directions to submit that question to a jury with appropriate and unambiguous instructions.

### III. Evidentiary Issues

Concerning the admissibility of contested evidence, the majority correctly rules that evidence of other substantially similar accidents and evidence of subsequent remedial measures was admissible in this case. Indeed, it will again be admissible on retrial. Despite this concession, the majority finds the evidence was nonetheless prejudicial because it was not used correctly: again, the majority errs.

The majority finds an abuse of discretion in the district court's admission of evidence of subsequent remedial measures, because "the retrofit evidence was admitted as ostensibly relevant to Deere's state of mind relat-

---

preme Court, as one example on point, has held the same:

We also reject the argument that punitive damages have no place in a strict liability case.... Where ... plaintiff is able to plead and prove that the manufacturer knew that its product was defectively designed and that injuries and deaths had resulted from the design defect, but

continued to market the product in reckless disregard of the public's safety, punitive damages may be awarded.

*Sturm, Ruger & Co., Inc. v. Day,* 594 P.2d 38, 46–47 (Alaska 1979) (citing numerous cases from other jurisdictions), *modified on other grounds,* 615 P.2d 621 (Alaska 1980), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981).

ing to imposition of punitive damages." *Supra* at 507. I cannot agree. The district court's ruling on the post-trial motions expressly states that post-sale conduct by Deere, over and above that necessary to show the existence of a dangerous defect, was admitted for the limited purpose of impeaching Deere's testimony that it had taken all reasonable steps to rectify the dangerous situation presented by the combine. *Burke v. Deere & Co.*, 780 F.Supp. 1225, 1245–47 (S.D.Iowa 1991). The district court even takes the trouble to repeat itself: "As previously mentioned, the court did not allow evidence for Deere's post-sale and post-accident conduct to demonstrate Deere's state of mind." *Id.* at 1256. The majority's contrary finding seems to challenge the integrity of the district court in a manner I cannot accept.

The majority also rules that because Deere was willing to stipulate to notice of other accidents and the feasibility of subsequent design changes, the evidence of other accidents occurring under substantially similar circumstances could not properly be admitted to prove these issues. *Supra* at 506. The majority, however, provides no authority for the proposition that the admissibility of evidence is diminished because the opposing party offers to stipulate to issues for which such evidence might be admitted. I believe the appropriate analysis for the admission of such evidence is whether the court abused its discretion—a finding the majority cannot make because there was no abuse. There were twenty-two accidents that occurred under substantially similar circumstances before Burke's own injury. Notwithstanding, the district court exercised sound discretion and allowed the live testimony of only five victims of those accidents.

The majority also states that evidence of these other accidents was used in the submission of the punitive damages question to the jury, and that the use of this evidence served to enhance the award of punitive damages. As I stated above, I believe there was error regarding counsel's closing argument intimation that part of the award of punitive damages would serve to compensate similarly situated victims. The error, however, was the ambiguous and misleading statement of counsel—not the properly admitted evidence of other similar accidents.

### IV. Conclusion

Accordingly, I would reverse the award of punitive damages and remand for a new determination of how much, if any, those damages should be. I must, however, dissent from the holding of the panel majority that today works an injustice by throwing out the baby with the bath water—needlessly reversing the entire trial below on suspect grounds, and erroneously redefining the parameters of Iowa products liability law.