H. N. WILLIAMS et al., Appellees, v. J. E. REDINGER, Appellant.

TROVER AND CONVERSION: Acts Constituting—Evidence. So
1  long as one is rightfully in possession of property by virtue
   of a lease, there is no conversion. Evidence reviewed, and held
   sufficient to prevent a jury question as to the existence of such
   lease.

TROVER AND CONVERSION: Acts Constituting—Compromise
2  Offer. One rightfully in possession of property by virtue of a
   lease, does not forfeit such right by a mere offer, in the nature
   of a compromise, to surrender such possession provided he
   is paid a sum of money claimed to be due him.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

MONDAY, MARCH 12, 1917.

ACTION to recover for the value of property alleged to
have been converted by defendant, resulted in the judgment
as prayed, though in a lesser amount. Defendant appeals.
—*Reversed.*

*Tomlinson & Gilmore,* for appellant.

*R. & F. H. Ryan,* for appellees.

1. TROVER AND
CONVERSION:
acts constitu-
ting: evidence.

LADD, J.—The plaintiffs leased the east
half of the defendant's double brick one-
story building, in which to operate a moving
picture show, for a term of five years begin-
ning October 1, 1912. The necessary appliances and fix-
tures were installed, and the "Cupid Theatre" operated un-
til July 20, 1914, when a contract of sale was entered into
with one Bottgar. Thereupon the lease was surrendered,
and the defendant entered into a lease with said Bottgar
for the term of five years, beginning July 1, 1914. There-
after this lease was assigned to Erman and Asbach, and
later, Asbach assigned his interest therein to Erman.

The defendant assented to these assignments. The appliances and fixtures were not paid for, and some of the rent was overdue when the parties hereto got together, and, in the latter part of February, 1915, settled in writing, the plaintiffs paying defendant $50 in cash on rent, and undertaking to pay another $50 "from the first money received on sale of any or all of the theatre equipment now used in the 'Cupid Theatre,' against which defendant agreed to waive his landlord's lien." The plaintiffs undertook "to take possession of the equipment, either amicably or by means of legal proceedings, and proceed to sell out as early as practicable, not later than March 1, 1915." Defendant undertook to attempt to get possession of the room by legal proceedings if necessary. On demand, possession was surrendered by Erman to defendant, the appliances and fixtures held by him under the contract of sale being in the building. A dispute arose over plaintiffs' right to possession of the equipment for the picture show, and this action was begun March 17, 1915. The plaintiffs alleged absolute ownership in them, possession by defendant, demand by them for the property, and defendant's refusal to yield possession. Recovery for the value of the property alleged to have been converted was prayed. These allegations were put in issue by the answer. A cross-petition was filed; but, as the ruling withdrawing the issues raised thereby is not challenged by assignment of error or brief point, and the evidence was not such as to support recovery thereon, its averments need not be stated. The main issue is whether defendant was entitled to retain the property under an oral lease, notwithstanding demand therefor. Plaintiffs deny, and defendant alleges that the latter had entered into an oral lease of the equipment with plaintiffs for the month of March, 1915, and was in possession thereunder. If so, defendant rightly refused to yield possession when demanded, and there was no conversion. An examination of the

record leaves no doubt that the evidence bearing on this
issue was in conflict. The plaintiff Mrs. Baker testified
that, about February 26, 1915, defendant's wife suggested
to her that she and her husband would like to lease the
equipment for a while, and see if the picture show could be
made to pay, and that she referred her to Walter Williams,
saying that whatever he did would be satisfactory to her.
Walter Williams, son of the plaintiff H. N. Williams, tes-
tified that he had a conversation with Mrs. Redinger, in
which she asked him what the use of said equipment would
be worth for one month, to which he responded, "$30;" that
she thought that too much, and that later she suggested $20
as being about right, and that he agreed to let her have it
for $20; that he drew up a lease covering the month of
March and presented to defendant and wife for signature,
whereupon they refused to sign it, insisting that they only
wanted it for two weeks; that he so changed it, and, as
they would not sign, he and his father demanded possession
March 16, 1915, and, as defendant refused to yield pos-
session, this suit was brought on the following day.

On the other hand, defendant's wife testified substan-
tially as did Mrs. Baker, and that at Mrs. Baker's instance
she telephoned to Walter Williams, inquiring "if he would
be willing to rent us the fixtures, and he said he would.
He said he wanted $30, and I told him I thought that was
too much, and he came down to $20 for the month, and then
I told him if it didn't pay I did not care to run it more than
two weeks—we would take it for the month—and the
agreement was so made. He said, 'Take it out of the $50
for time used,' and I considered the rent which we owed,
supposing it was all paid, and nothing was said about a
written contract or lease or anything."

She testified further that they operated the moving pic-
ture show until March 9th following, when Williams sub-
mitted a written lease for signature, and that they refused

to sign it, as they had already leased the building. Later, plaintiffs' attorney submitted a lease, which they also refused to sign. The defendant testified that he stood by when Mrs. Redinger telephoned Williams; that they were in possession of and operated the picture show from March 1, 1915, until March 23d, when the equipment was removed to the basement, and that:

"No demand was made upon me by Mr. Williams or Mrs. Baker for the possession of the moving picture outfit before the first of March, 1915, nor until after we had been in possession of the show for about a week. They brought a lease to our place and wanted us to sign it, and I told them we had one and we didn't need two. I told them we had a verbal lease, and the written one was bad and I would not sign it, and then Mr. Ryan said that they would close the show. I said 'Close the show. We don't want the show. Our rent is paid, and if you feel like closing it, close it. I don't want it. Before I will sign the lease, you can close it and take it.' * * * I know Mr. Ryan and Mr. Williams came out to the show to take possession. I told Mr. Ryan I had rented it for a month and the rent was paid, and if he wanted the fixtures to go down town and settle with you [Mr. Tomlinson] and pay you what he was owing me and get the stuff that night. They had not made the payment of the balance of $50, nor made any offer at that time. I did not at any time refuse to let them have the goods except on condition that they pay what was owing me. I told them at any time they paid the balance of the money they owed me they could come and get the stuff at any time. They didn't take anything until they took it all. That was the 7th of June. At the time they paid me the other $50, they took it all, except they left some old broken-up lumber. Mr. Ryan said if I would allow them to take the fixtures, he would let me keep the broken-up lumber as wood. Q. Did you stop them from tak-

ing anything that they wanted to take that belonged to them? A. Not a thing after they paid me what they owed me. They took what they wanted. I did not stop them at all. They left the stuff they did leave without any suggestion from me."

Walter Williams denied that Redinger offered to surrender possession of the property, and testified that he had not told defendant's wife that she and defendant might have the use of the property for two weeks or a month, or any other time, and swore that there was no definite understanding as to leasing. Thereafter, the court called defendant, who, in response to questions, swore that he had never paid the $20 for rent, and that nothing had ever been said about it.

"Court: The plaintiff in this case is denying that lease entirely? Mr. Ryan: Absolutely. Court: Gentlemen of the jury, it is the order of this court that all of the testimony of the defendant Redinger with reference to a lease be stricken from this record. The testimony here would not justify you in finding that Redinger ever had a verbal lease is withdrawn from your consideration entirely."

The record, as recited, compels us to differ with the trial court, and to say that there was a sharp conflict in the evidence as to whether the parties had agreed that defendant and his wife were to have the use of the equipment for the term of one month from March 1, 1915. It is suggested that Mrs. Redinger was not shown to have acted for defendant. The latter was at her side when negotiating with Walter Williams, and ratified her agreement, if any there was, by using the property in operating the picture show. He was bound by what she did in his behalf. Again, Walter Williams' authority to act in behalf of plaintiff is questioned. As seen, Mrs. Baker agreed in advance to be bound by anything he did, and the evidence was such as to carry to the jury the issue as to whether what he did was with his

father's approval. The latter testified that defendant claimed to have leased the property in February, and that "they were running the place without any authority from us because they hadn't signed the lease." This impliedly conceded the authority of his son to lease, and, in view of the entire record, at the least made an issue for the jury. But

2. TROVER AND CONVERSION: acts constituting: compromise offer.

appellee suggests that, as defendant offered to yield possession if the remaining $50 owed on settlement were paid, he cannot insist on his rightful possession under the alleged oral lease as a reason for not yielding possession—relying on *Farmers' Milling Co. v. Mill Owners Mut. Fire Ins. Co.*, 127 Iowa 314; *Donley v. Porter*, 119 Iowa 542, 545; and like decisions. But defendant distinctly asserted the existence of the oral lease and his possession thereunder, as plainly appears from testimony heretofore quoted. True, he also offered to yield possession then on condition that the deferred payment of $50 be then made. This was not done, and therefore the offer not accepted. That said doubtless was by way of concession, for he had waived any lien he may have had as landlord. At any rate, the conditional offer of possession did not obviate his assertion of the right to continue in possession of the property under the alleged oral lease.

The issue as to whether there was an oral lease should have gone to the jury.—*Reversed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.