Michael **LARSON**, Plaintiff–Appellee,

v.

**GREAT WEST CASUALTY COMPANY, Defendant,**

and

**Custard Insurance Adjusters, Defendant–Appellant.**

No. 90–1800.

Court of Appeals of Iowa.

Feb. 12, 1992.

As Corrected Feb. 12, 1992

Mark McCormick and Margaret C. Callahan of Bellin Harris Lamson McCormick, Des Moines, for defendant-appellant.

Kirke Quinn of Courter, Quinn, Doran & Anderson, Boone, for plaintiff-appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Defendant-appellant Custard Insurance Adjusters appeal following a jury trial finding it converted a pickup owned by plaintiff-appellee Michael Larson. The jury awarded plaintiff $3,200 actual damage for the truck and $225,000 punitive damages. We affirm in part, reverse in part, and remand for a retrial on the issue of compensatory damages.

Plaintiff is a resident of Alaska. He drove to Iowa in the 1986 pickup he contends was converted. Plaintiff was in an accident with the pickup while pulling a rental trailer. He was headed to an Iowa farm where he intended to pick up an antique truck to take to Utah. In the accident plaintiff's pickup was struck by a vehicle insured with Great West Casualty Company. Great West was also sued. A verdict was returned in Great West's favor and it is not a party to this appeal. Great West hired defendant Custard to adjust the claim. Custard adjuster, William Shackelford, was put in charge of the claim.

After the accident, plaintiff arranged for the damaged truck to be stored in a farm shed in Iowa. Plaintiff met with Shackelford. Plaintiff then returned to Alaska.

After plaintiff returned to Alaska, Shackelford communicated with him by telephone and offered him $12,000 for the damaged truck. Plaintiff did not accept the offer. Plaintiff, by telephone, expressed concern to Shackelford about a highway patrol impound notice stating plaintiff's damaged truck would be auctioned off if not claimed or moved. Subsequently, plaintiff received an impound notice on the rental trailer. On June 28, 1988, plaintiff wrote Shackelford a letter complaining Shackelford had not taken care of the problem with the highway patrol and had not met plaintiff's expectations. A day later plaintiff wrote the highway patrol, with a copy to Shackelford, asking that the patrol delay further action regarding his damaged truck until it heard from plaintiff, plaintiff's attorney, or Shackelford. Shackelford, in response to plaintiff's concerns, called the highway patrol. An officer, apparently in error and under the impression the damaged truck remained in the barn of the towing service rather than in the private barn, told Shackelford the damaged truck would have to be moved.

Shackelford took photographs of the pickup to six salvage yards to obtain bids on the truck. On June 3, 1988, Sam's Riverside Auto Parts, Inc. made the bid of $3,200.

On June 30, 1988, Shackelford called Sam's to pick up the truck. Shackelford sent a letter to Great West on the same day. The letter in part stated, "We have arranged for the removal of the insured's truck to the high salvage bidder in Des Moines."

In the same letter Shackelford advised Great West the rental trailer plaintiff was towing at the time of the incident was also damaged in the accident and the trailer was removed from highway service to a location that will not charge for storage.

Sam's tow truck removed plaintiff's pickup from the barn on July 9, 1988. Sam's paid storage charges to the farmer when it removed the truck.

Shackelford had not told Sam's the claim had not been settled and did not give Sam's any instructions regarding the handling of the salvage. Sam's, even though it did not have title, resold plaintiff's truck. Sam's was a party to the original action. The jury found Sam's too had converted the truck but did not award punitive damages against Sam's. Sam's is not a party to this appeal.

■■■ Defendant first contends the district court committed error in failing to direct a verdict in its favor on plaintiff's claim for conversion. In ruling on defendant's motion for directed verdict we consider the evidence in the light most favorable to the plaintiff. *See Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990); *Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986). We must determine whether the record contains substantial evidence on each element essential to the plaintiff's claim. *See Poulsen v. Russell,* 300 N.W.2d 289, 296 (Iowa 1981). If the plaintiff as to one or more elements of the claim has failed to adduce substantial evidence, directed verdict for the defendant will be required. *See Kurth,* 380 N.W.2d at 695. Plaintiff's evidence on a given element will be deemed "substantial" when a reasonable

mind would accept it as adequate to reach a conclusion in plaintiff's favor. *See Johnson,* 451 N.W.2d at 171.

■■■ This court applies the same standards as the trial court in ruling on defendant's motions for directed verdict. *See id.* The sufficiency of plaintiff's evidence to generate a submissible jury issue is a question of law. *See Wolfe v. Graether,* 389 N.W.2d 643, 651 (Iowa 1986). This court is not bound by the trial court's conclusions of law. *See Midwest Recovery Servs. v. Wolfe,* 463 N.W.2d 73, 74 (Iowa 1990); *In re Mt. Pleasant Bank & Trust Co.,* 426 N.W.2d 126, 129 (Iowa 1988).

■■■ A conversion occurs when a person or entity exercises wrongful control or dominion over the property of another in denial of or inconsistent with the other's possessory right to the property. *See Kendall/Hunt Publishing Co. v. Rowe,* 424 N.W.2d 235, 247 (Iowa 1988); *Welke v. City of Davenport,* 309 N.W.2d 450, 451 (Iowa 1981). No conversion may be found where the exercise of control was not wrongful, as, for example, where the property was rightfully in the possession of the defendant, *e.g., Williams v. Redinger,* 179 Iowa 615, 616, 161 N.W. 701, 702 (1917); where the plaintiff abandoned the property, *see* 18 Am.Jur.2d *Conversion* § 91 (1985); or where the plaintiff expressly or implicitly consented to the interference, *see Restatement (Second) of Torts* § 252 (1965). Consent to the interference exists, and no conversion can be found, where the plaintiff's conduct reasonably led the defendant to believe the defendant had authority for the actions taken with regard to the property. *Restatement (Second) of Torts* § 892 and comment c (1979); *Restatement (Second) of Torts* § 221 comment b (1965); *see Ontario Livestock Comm'n Co. v. Flynn,* 256 Iowa 116, 121, 126 N.W.2d 362, 365 (1964).

An act which is merely negligent with respect to an item of property will not constitute a conversion, even though the act may result in the loss or destruction of the property. *Restatement (Second) of Torts* § 224 (1965). The act constituting

the wrongful exercise of dominion and control must be intentional. *Id.*

■ Liability may be imposed for conversion only when the intentional and wrongful interference with the property is so serious that the actor may justly be required to pay full value. *See Kendall/Hunt Publishing Co.,* 424 N.W.2d at 247. Iowa has adopted from the *Restatement (Second) of Torts* § 222A the following list of factors to be considered in determining whether the interference was sufficiently serious to give rise to a conversion:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other.

*Kendall/Hunt Publishing Co.,* 424 N.W.2d at 247 (quoting *Restatement (Second) of Torts* § 222A(2) (1965)). There is probably no type of conduct with respect to a chattel which is always and under all circumstances sufficiently important to amount to a conversion. *Restatement* § 222A comment d, at 433.

■ Defendant advances no conversion occurred. Defendant first argues the record establishes a standard industry practice is for an insurance company or adjuster to take charge of a damaged vehicle. The defendant's second argument is that the plaintiff's words and conduct led Shackelford to believe the damaged vehicle would be dealt to the high salvage bidder through the insurance adjustment process. The defendant's third argument is the record contains no evidence plaintiff, prior to removal of the damaged vehicle from the farm shed, suggested to Shackelford that he wanted to retain the damaged vehicle or dispose of the salvage himself. Defendant's fourth argument is Shackelford moved the vehicle because he believed if it were not moved it would be impounded.

Defendant argues these four factors show the transfer of the vehicle to Sam's was done with plaintiff's apparent consent and consequently there was no conversion. We disagree. There was sufficient evidence to generate a jury question on the issue of conversion. *See Johnson,* 451 N.W.2d at 171. However, we consider these four arguments in addressing defendant's contention the plaintiff failed to adduce sufficient evidence to support the punitive damage award.

■ Defendant asks that the punitive damage award be set aside because there was not sufficient evidence of malice or willful disregard to allow submission of this claim. For exemplary damages to be awarded the conversion must have been characterized by malice or willful disregard of the plaintiff's rights. *See Sandhorst v. Mauk's Transfer, Inc.,* 252 N.W.2d 393, 399 (Iowa 1977). An award of punitive damages is appropriate only when a party acts with actual or legal malice. *See Barnhouse v. Hawkeye State Bank,* 406 N.W.2d 181, 184 (Iowa 1987). Actual malice is shown by such things as personal spite, hatred, or ill will. *Parks v. City of Marshalltown,* 440 N.W.2d 377, 379 (Iowa 1989). Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another. *Id.* A jury to award punitive damages must find that "the conduct ... from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code section 668A.1(1)(a) (1987). Conduct is willful and wanton when the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow. *See Fell v. Kewanee Farm Equip. Co.,* 457 N.W.2d 911, 919 (Iowa 1990) (quoting *Prosser & Keeton on Torts* § 34, at 213 (5th ed. 1984)). An award of punitive damages is not appropriate where room exists for reasonable disagreement over the relative risks and utilities of the conduct at issue. *See Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 613, 623 (8th Cir.1983) (applying

Iowa law). An award of punitive damages will be particularly inappropriate where the risk alleged to have been disregarded could reasonably have been perceived by the defendant as slight. *See Kimmel v. Iowa Realty Co., Inc.*, 339 N.W.2d 374, 383–84 (Iowa 1983). The willful and wanton disregard necessary to support an award of punitive damages must be established by clear, convincing, and satisfactory evidence, a statutorily imposed burden of proof greater than a mere preponderance of evidence. Iowa Code section 668A.1(1)(a) (1987); *see Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa App.1983).

Punitive damage claims cannot arise from conduct which is merely objectionable. *See Coster v. Crookham*, 468 N.W.2d 802, 811 (Iowa 1991). Punitive damages are not awarded as a matter of right but only as a form of punishment and to deter others from conduct which is sufficiently egregious to call for the remedy. *See Coster*, 468 N.W.2d at 810; *Northrup v. Miles Holmes, Inc.*, 204 N.W.2d 850, 861 (Iowa 1973).

Shackelford was not careful in dealing with the salvage of the plaintiff's pickup. His conduct does not, however, rise to the level of a wanton disregard for the plaintiff's rights.

There is not direct evidence of malice. We do not find the defendant's conduct to be so improper as to raise any inference of malice. *See C. Mac Chambers Co. v. Iowa Tae Kwon Do Academy, Inc.*, 412 N.W.2d 593, 599 (Iowa 1987).

Shackelford was operating under the assumption he was to take care of the salvage. The plaintiff's letters clearly indicate he anticipated Shackelford would assume some responsibility for the salvage. The property converted was a damaged 1986 pickup that plaintiff had removed parts from after the accident. The plaintiff lived in Alaska and manifested a desire not to return to Iowa. The plaintiff was seeking to settle his property damage claim which generally under the industry practice would result in Great West taking the wrecked pickup. While the salvage was converted, there is not evidence of any intent to deprive the plaintiff of the money from the salvage. Rather, the purpose of the conversion was to convert the damaged pickup to cash. For the plaintiff, who lived out of state, was accruing storage and expressed no desire to return to Iowa, the cash would seem more valuable than the damaged undriveable pickup. The plaintiff's intent not to repair the pickup was evidenced by his removal of certain items from the damaged pickup. We do not find the evidence shows the culpability necessary to support a punitive damage award. *See Kimmel*, 339 N.W.2d at 383–84 (an award to vendors of punitive damages for fraud and breach of a fiduciary duty by a real estate agent in allowing its representative to assume dual relationship in a property purchase was not supported even though there was evidence the broker had knowledge its representative was a risky buyer).

The amount the jury awarded plaintiff for compensatory damages was the salvage value of the truck. There was uncontroverted evidence the plaintiff suffered other damages as a result of the conversion. The jury obviously considered this evidence in fixing punitive damages. We have reversed the punitive damage award. Fairness would dictate plaintiff should have the opportunity to relitigate the amount of compensatory damages. We therefore remand for that limited purpose. We do not retain jurisdiction.

We affirm the finding defendant Custard converted plaintiff's truck. We reverse the award of punitive damages, and we remand for a new hearing on compensatory damages. Costs on appeal are taxed one-half to each party.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR NEW TRIAL ON THE ISSUE OF COMPENSATORY DAMAGES.