**IN THE COURT OF APPEALS OF IOWA**

No. 14-1568
Filed November 25, 2015


**RUSSELL N. THEIS,**
        Plaintiff/Counterclaim Defendant-Appellee,

**vs.**

**SHAWN KALVELAGE,**
        Defendant/Counterclaim Plaintiff-Appellant.
_____


        Appeal from the Iowa District Court for Howard County, Richard D. Stochl,

Judge.


        Defendant appeals from the district court's judgment for conversion of the

plaintiff's property.  **REVERSED AND REMANDED WITH DIRECTIONS.**



        Patrick A. Ritter of Elwood, O'Donohoe, Braun & White, LLP, Cresco, for

appellant.

        Mark B. Anderson of Mark B. Anderson, P.C., Cresco, for appellee.



        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Shawn Kalvelage appeals from the district court's judgment for plaintiff, Russell Theis. Kalvelage maintains the district court erred in finding Kalvelage converted Theis' property. He argues the district court erred by not considering to what extent Kalvelage had a duty to safeguard Theis' property and if Kalvelage breached that duty.

As a matter of law, Kalvelage became a constructive bailee of Theis' property when he received the deed to the land the property was stored on. As a constructive bailee, Kalvelage is only responsible for the loss of Theis' property if gross negligence or bad faith is found. Because Kalvelage's interference with the property was not in violation of his duty as a constructive bailee and Kalvelage's disposal of the property did not give rise to a conversion action, the district court erred in finding he converted the property and entering judgment in favor of Theis. We reverse and remand for entry of a corrected judgment entry reflecting a judgment on the counterclaim for $1200 in favor of Kalvelage and judgment of dismissal on Theis' claims.

**I. Background Facts and Proceedings.**

Theis was friends with Bernard Kalvelage—the father of the defendant. During Bernard's life, he allowed Theis to store property including cars, an old motor home, and miscellaneous automotive and recreational vehicle parts at his acreage.

Bernard died in January 2009, and his brother Kenny was named the executor of Bernard's estate. Theis contended Kenny allowed him to continue storing the items on the property.

Shawn Kalvelage was his father's sole heir. In August 2009, Kalvelage received the title to the acreage. His attorney sent a letter to Theis advising him, "Shawn is the legal owner of the premises. He will be putting his own locks on the buildings and if you need to go on the real estate again you need to contact either me or him to get permission to do so."

Kalvelage's attorney sent Theis another letter on October 29, 2009. In it, Kalvelage offered to sell Theis the acreage for $50,000. Theis declined.

On February 2, 2010, Kalvelage's attorney sent Theis a letter stating, "[T[here are a number of personal property items which have been abandoned by you located on the premises, consisting of junk vehicles, equipment, tools, etc." The letter indicates Theis was "instructed in August 2009 to remove any items which belonged to you." It then advised that the letter was "final notice to [Theis] that any of [his] items which are not removed within 30 days of the date of this final letter will be considered abandoned and will be removed and/or destroyed." Theis was directed to call Kalvelage directly in order to arrange a time to remove his items.

Arrangements to remove the property were never made. Instead, on February 24, 2010, Theis' attorney responded to the previous letter, requesting additional time to remove the items "due to significant snow accumulations." He suggested waiting until the snow melted "in late March or early April."

On March 17, 2010, Kalvelage's attorney responded with another letter telling Theis he owed $350 for storage of the items—fifty dollars per month for the seven months Kalvelage had owned the property. Theis was instructed to deliver the money to Kalvelage's attorney within one week and then

arrangements would be made for Theis to recover his property. Theis never paid the demanded sum and never recovered his property. At trial, Theis testified he had tried to contact Kalvelage multiple times but was unable to reach him. Theis did not explain why correspondence did not continue through counsel.

Theis testified that he drove past the acreage in July 2010 and noticed some of his items were missing. He apparently reached this conclusion because he had previously observed his trailer loaded with his parts, tools and equipment and it was no longer located on the property. Theis filed a petition at law on August 11, 2010, asserting Kalvelage had fraudulently converted his property and asking for damages in excess of $5000.

On September 20, 2010, Kalvelage filed an answer and counterclaim. As a defense, Kalvelage asserted Theis abandoned the property. He also requested damages "for the reasonable storage fee for storing the personal property" and "for the cost incurred to remove the personal property from the premises." He also asserted Theis had converted a skid loader that belonged to Bernard.

Shortly after Theis filed his petition, he received notice from the Chickasaw County Sheriff that the five cars he had stored on the Kalvelage property had been found on a property vacated by the tenant. Theis was able to recover the five cars as well as the trailer and some automobile parts.

The matter continued to trial February 13, 2014. At trial, Theis presented a list of items he claimed he had stored on the Kalvelage property. Included on the list was a 1972 Winnebago. It became clear through Theis' own evidence that the Winnebago did not belong to him and Theis abandoned his claim to it

during trial. Additionally, regarding the skid loader Kalvelage claimed belonged to Bernard, Theis claimed he paid Bernard for half of the skid loader in cash and purchased the other half through labor. Theis claimed he owned the skid loader. However, Bernard borrowed money to purchase the skid loader. He financed the entire purchase price, and there is no record of a cash payment being made against the loan.

The district court indicated it was "disturbed by Theis' attempts to recover money for property he knew he did not own" and questioned his credibility. Notwithstanding, the court determined Kalvelage had not followed Iowa Code section 556B.1 (2009) in disposing of abandoned property, thus he was responsible for the improper disposal of $12,000 of Theis' property. Kalvelage was ordered to return any of the property remaining in his possession. Theis was ordered to deliver the skid loader to Kalvelage.

On June 9, 2014, the parties returned to court. Kalvelage advised the court he did not have any of Theis' items in his possession. The court concluded Theis was entitled to reimbursement for $12,000 worth of property. The court then deducted $1200 after determining Theis owed Kalvelage $600 for the six months Kalvelage was deprived of using the skid loader and an additional $600 as a storage fee for the six months Kalvelage was forced to store his property. The district court entered judgment for Theis in the amount of $10,800. Kalvelage appeals.

**II. Standard of Review.**

This case was tried at law; therefore our review is for corrections of errors at law. Iowa R. App. P. 6.907; *see also Blackford v. Prairie Meadows Racetrack*

*& Casino, Inc.*, 778 N.W.2d 184, 187 (Iowa 2010). "In a law action, findings of fact are binding on us if supported by substantial evidence." *Blackford*, 778 N.W.2d at 187. We view the evidence in the light most favorable to the trial court's judgment. *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006). If the district court has applied erroneous rules of law that materially affected its decision, we must reverse on appeal. *Land O'Lakes*, *Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000).

**III. Discussion.**

**A. Constructive Bailment.**

In the appellant's brief, Kalvelage argues:

The issues herein are more properly framed by determining what duties, if any, Shawn Kalvelage and the Estate of Bernard Kalvelage had with respect to the storage and disposition of the chattels, and whether they breached those duties. If Theis believes he is entitled to damages, he should have been required to successfully plead and prove the elements of negligence, which were not pleaded at trial and which are not established in the current record.

We agree the issues should be framed as to what extent Kalvelage had a duty to safeguard Theis' property and if Kalvelage breached that duty.[1]

As a matter of law, Kalvelage became an implied or constructive bailee of Theis' property after Kalvelage took title to the real estate the property was

---

[1] The district court concluded Kalvelage failed to comply with Iowa Code chapter 556B and therefore the property was "improperly disposed of" and thus, not abandoned. The court then concluded Kalvelage committed conversion without regard to the nature of Kalvelage's duties or the elements necessary to constitute a conversion. This conclusion was erroneous.

Iowa Code chapter 556B applies only to personal property and motor vehicles "unlawfully parked or placed upon the property." Here the personal property was lawfully placed upon the land with the consent of the landowner, Bernard Kalvelage, and thus chapter 556B is inapplicable. Because a gratuitous or constructive bailment was created when Kalvelage received the deed to the land Theis' property was stored on, the question is whether Kalvelage breached his duty as a constructive bailee.

stored on. "When a person comes into lawful possession of personal property of another without an underlying agreement, the possessor may become a constructive bailee." *Khan v. Heritage Prop. Mgmt.*, 554 N.W.2d 725, 729-730 (Iowa Ct. App. 1998). A constructive bailment is created "as a result of a party having come into possession of the personal property of another without that party being specifically entrusted with the property as a bailee." 39 Am. Jur. 2d *Proof of Facts* at 501 (1984).[2]

Once a bailment is established, the law imposes specific duties upon bailees to care for the bailor's property while it is in their possession. *Khan*, 554 N.W.2d at 730. The degree of care to be exercised by a bailee depends upon the type of bailment. *Id.* When the bailment for mutual benefit exists, the fact that the bailment was damaged while in the bailee's possession creates a presumption that the damage was due to the negligence of the bailee. *Naxera v. Wathan*, 159 N.W.2d 513, 518 (Iowa 1968). In contrast, as here, where a gratuitous bailment exists, the bailee is only liable if a reasonable degree of care is not exercised. *See Sherwood v. Home Sav. Bank*, 109 N.W. 9, 12 (Iowa 1906). As our supreme court has stated, "There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay . . . ." *Siesseger v. Puth*, 239 N.W. 46, 52 (Iowa 1931). Some time ago, our supreme court stated the applicable duty of a gratuitous bailee:

_____

[2] There is some dispute regarding what property of Theis' was in Kalvelage's control, as Kalvelage contended he never had possession of the chisel plow. However, there is no question Kalvelage disposed of some personal property previously owned by Theis.

> The general doctrine, as stated by text writers and in judicial decisions, is that gratuitous bailees of another's property are not responsible for its loss, unless guilty of gross negligence in its keeping. But gross negligence in such cases is nothing more than a failure to bestow the care which the property in its situation demands. The omission of the reasonable care required is the negligence which creates the liability; and whether this existed is a question of fact for the jury to determine, or by the court where a jury is waived.

*Sherwood*, 109 N.W. at 12. A gratuitous bailee is "not responsible simply because the [bailor's] property was lost." *Fazio v. Brotman*, 371 N.W.2d 842, 848 (Iowa Ct. App. 1985).[3]

We cannot say that Kalvelage's actions rose to the level of gross negligence. Kalvelage received the deed to the acreage in August 2009. He sent Theis a letter on February 2, 2010, indicating Theis needed to remove the property within thirty days or it would be considered abandoned. We acknowledge Theis responded and asked for additional time—suggesting waiting until the snow melted in March or April—but even the extension was well past when Kalvelage disposed of Theis' property in July 2010. Moreover, Theis acknowledged he knew he was going to have to remove the property well before receiving the February 2, 2010 letter. Kalvelage had stored the property for almost one year, and approximately six months after explicitly asking Theis in writing to remove the property, before ultimately disposing of it.

---

[3] We acknowledge the duty expressed in the Uniform Jury Instruction that Kalvelage can be liable if he "failed to exercise that degree of care for such property that would be exercised by persons of prudence in keeping property of like value under like circumstances." Uniform Civil Jury Instruction 2300.7. However, this expression of the duty is clearly at odds with the opinions in *Sherwood* and *Siesseger.* It is also at odds with the second edition of American Jurisprudence's section on bailments, which states, "while a bailee for hire may be liable for simple negligence, a gratuitous bailee is liable for only gross negligence or bad faith." 8A Am. Jur. 2d *Bailments* § 109 (2d ed. 2015).

We also consider that Kalvelage waited to dispose the property until he had a court order from the estate case, stating in part, "Any items located at the acreage shall be considered property of the estate."[4]  It is unclear from the record before us whether Theis was a party to or had notice of the estate proceedings, and we are not saying that the court order gave Kalvelage the right to dispose of the property.[5]  However, we believe it was reasonable of Kalvelage to rely on the plain meaning of the order and act accordingly.

At a minimum, we can say as a matter of law that Kalvelage did not commit gross negligence.  Thus, he is not liable for the loss of Theis' property and the resulting damages.

**B. Conversion.**

We acknowledge a conversion action may lie when a bailee makes an unauthorized disposition of the bailor's property:

> An absolute and unqualified refusal by the bailee to return or redeliver the property to the bailor, made in derogation of the bailor's title or right to possession, constitutes actionable conversion.  Furthermore, the bailee cannot qualify his or her duty to return the bailed property by prescribing conditions not implied by law or contemplated by the parties in the contract of bailment without being guilty of conversion.  A bailee is not guilty of conversion, however, where his or her refusal to redeliver the property to the bailor is qualified by conditions that are reasonable and not inconsistent with the bailor's rights, provided that the reason for the refusal to return the item is immediately communicated to the bailor.  For example, a refusal to return bailed property is justified when it is accompanied by a demand for payment of charges for which the bailee has a lien.

---

[4] The court order in the estate case was entered July 19, 2010.
[5] In his brief, Theis does concede that he "had appeared in the estate proceeding asserting his position as the owner of the personal property on the premises."

8A Am. Jur. 2d *Bailments* § 75, at 598–99 (2d ed. 2015); *see also Schoenholz v Hinzman*, 289 P.3d 1155, 1161 (Kan. 2012).

Conversion is "the wrongful control or dominion over another's property contrary to that person's possessory right to the property. The wrongful control must amount to a serious interference with the other person's right to control the property." *Lewis v. Jaeger*, 818 N.W.2d 165, 188 (Iowa 2012). "No conversion may be found where the exercise of control was not wrongful . . . ." *Larson v. Great West Cas. Co.*, 482 N.W.2d 170, 173 (Iowa Ct. App. 1992). The exercise of control or interference with the property is not wrongful when the plaintiff consented to the action. *See* Restatement (Second) of Torts § 252, at 482 (1965) ("One who would otherwise be liable to another for . . . conversion is not liable to the extent that the other has effectively consented to the interference with his rights."). "Consent to the interference exists . . . where the plaintiff's conduct reasonably led the defendant to believe the defendant had the authority for the actions taken with regard to the property." *Larson*, 482 N.W.2d at 173. "Even when the person concerned does not in fact agree to the conduct of the other, his words or acts *or even his inaction* may manifest a consent that will justify the other in acting in reliance upon them." Restatement (Second) of Torts § 892 cmt. c, at 363 (1979) (emphasis added).

Although Theis originally had permission to leave his items on the acreage, he was aware he would have to remove them after Kalvelage became owner of the property in August 2009. Approximately six months after he received the deed to the property, in February 2010, Kalvelage sent Theis a letter indicating that he needed to remove his items within thirty days or they were

going to be disposed of. Rather than making arrangements to remove his property, Theis requested additional time. Kalvelage responded on March 17, 2010, instructing Theis to pay $350 for storage and make arrangements to remove his items. Theis never made arrangements to recover his property. Kalvelage waited approximately four months to dispose it. Theis' inaction—his failure to retrieve the items and failure to respond—manifested consent.[6] "This conduct is not merely evidence that consent in fact exists, to be weighed against a denial. It is a manifestation of apparent consent, which justifies the other in acting on the assumption that consent is given" and it "is as effective to prevent liability in tort as if there were consent in fact." Restatement (Second) of Torts § 892 cmt. c, at 363 (1979). Because Kalvelage relied on Theis' inaction or apparent consent to dispose of the property, we determine as a matter of law that Kalvelage's disposal of the property did not constitute gross negligence entitling Theis to damages for conversion.[7]

### C. Attorney Fees.

Theis contends Kalvelage's appeal is frivolous and requests appellate attorney fees. His request is denied.

---

[6] At trial, Theis claimed he tried unsuccessfully to make contact with Kalvelage several times in order to arrange for the retrieval of the items. Other than his testimony, he had no evidence to support his assertion. He did not explain why he did not continue to use counsel to communicate. Theis also acknowledged he knew he was going to have to remove the property well before receiving the February 2, 2010 letter.

[7] On appeal Kalvelage argued, in the alterative, that even if he converted Theis' property, the judgment against him should be vacated or reduced because Theis did not take action to mitigate the damages. Because we find Kalvelage did not convert Theis' property, we do not consider his alternative argument.

**IV. Conclusion.**

Because Kalvelage's interference with the property was not in violation of his duty as a constructive bailee and Kalvelage's disposal of the property did not give rise to a conversion action, the district court erred in finding he converted the property and entering judgment in favor of Theis. We reverse and remand for entry of a corrected judgment entry reflecting a judgment on the counterclaim for $1200 in favor of Kalvelage and judgment of dismissal on Theis' claims.

Costs of this appeal are assessed to Theis.

**REVERSED AND REMANDED WITH DIRECTIONS.**