# IN THE COURT OF APPEALS OF IOWA

No. 17-0718
Filed November 7, 2018

**THUNDER & LIGHTNING, INC.,**
 Plaintiff-Appellant,

**vs.**

**435 GRAND AVENUE, LLC, d/b/a 435 E. GRAND AVE., LLC, SANTOKH NAGRA, PETER SAND, and LOYD OGLE,**
 Defendants-Appellees.

_____

Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

In this consolidated appeal, we consider Thunder & Lightning, Inc.'s direct appeals of the order dismissing its trespass claims and a certiorari action concerning sanctions awarded against Thunder & Lightning and its attorney. **REVERSED AND REMANDED; WRIT ANNULLED.**

Cornelius S. Qualley of Qualley Law, P.L.C., Des Moines, for appellant.

Paul J. Statler of Statler Law, PLLC, Des Moines, for appellee.

Heard by Danilson, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

This appeal consolidates Thunder & Lightning, Inc.'s direct appeal of the order dismissing its trespass claims against the defendants and a certiorari action concerning an order awarding sanctions against Thunder & Lightning and its attorney for violating Iowa Rule of Civil Procedure 1.413. Because the defendants entered the leased premises without consent, Thunder & Lightning proved the defendants committed trespass. Accordingly, we reverse the dismissal of its claims for trespass and conspiracy to commit trespass and remand to the district court to determine the amount of Thunder & Lightning's damages. Because the district court did not abuse its discretion in sanctioning Thunder & Lightning and its attorney for violating rule 1.413 by failing to conduct a reasonable inquiry before initiating a contempt action, we annul the writ of certiorari.

**I. Background Facts and Proceedings.**

Thunder & Lightning leased commercial space from 435 Grand Avenue LLC, d/b/a 435 E. Grand Ave., LLC (435 Grand) for a five-year term beginning August 1, 2011, and ending July 31, 2016.[1] Thunder & Lightning operated the premises as the Lime Lounge. The parties' relationship soured and can be described as contentious, though another apt descriptor would be litigious. Three years into the lease, 435 Grand filed a petition alleging Thunder & Lightning breached the lease by failing to pay property taxes, and Thunder & Lightning counterclaimed for lack of notice of default, libel, and reimbursement for

---

[1] The leased premises are located at 435 E. Grand Avenue in Des Moines.

remodeling costs. Although the parties later dismissed the claims, the litigation did not end there.

Thunder & Lightning initiated the present action against 435 Grand in September 2015. It alleged multiple claims of breach of contract against 435 Grand, in addition to a claim of libel. Thunder & Lightning also sought specific performance of a lease provision that provided it with an exclusive option to purchase the real estate during the first forty-eight months of the lease. Following events that occurred in January 2016, Thunder & Lightning later amended the petition to add 435 Grand's principal, Santokh Nagra, and two of its attorneys, Peter Sand and Loyd Ogle, as parties. It also added claims of breach of covenant of quiet enjoyment, trespass (against Nagra, Sand, and Ogle), civil conspiracy to commit trespass (against Nagra, Sand, and Ogle), fraudulent misrepresentation, and fraudulent nondisclosure. The district court severed the claims of trespass and civil conspiracy to commit trespass for a separate trial.

The two trespass claims were tried to the court in February 2017. On the last day of trial, Thunder & Lightning filed a motion for rule to show cause, alleging 435 Grand was in contempt of a court order relating to the first trial on the bulk of its claims. In an April 2017 order, the district court dismissed both trespass claims and denied Thunder & Lightning's motion for rule to show cause. On its own initiative, the court found Thunder & Lightning and its attorney violated Iowa Rule of Civil Procedure 1.413 in filing the motion for rule to show cause and allowed the defendants ten days to suggest an appropriate sanction. In a May 2017 order, the court assessed a total of $1120 in sanctions jointly and severally against Thunder & Lightning and its attorney, Cornelius Qualley (Qualley), to compensate the

defendants for the attorney fees expended in defending the motion for rule to show cause.

Thunder & Lightning appealed the dismissal of its trespass claims and the order awarding sanctions. The Iowa Supreme Court consolidated the appeals and transferred the matter to this court. Additional facts will be discussed below.

## II. Trespass Claims.

Thunder & Lightning first appeals the dismissal of its claims for trespass and civil conspiracy to commit trespass.[2] It argues the district court erred in failing to find the defendants committed trespass by entering and remaining upon the leased property without its consent.

### A. Scope and Standard of Review.

Our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. The trial court's fact findings are binding upon us if supported by substantial evidence. *See* Iowa R. App. 6.904(3)(a). "Substantial evidence supports a factual finding when the finding 'may be reasonably inferred from the evidence

---

[2] It is the appellant's duty to prepare and file an appendix containing parts of the district court record designated by the parties. *See* Iowa R. App. P. 6.905(2). Rule 6.905(7)(c), which concerns transcripts of proceedings and depositions, requires the appellant to insert the name of the witness whose testimony is included in the appendix at the top of each page it appears in the appendix. This was not done for the 220 pages of trial transcript included within the 651-page appendix. Rule 6.905(4)(b) requires the table of contents to state the name of each witness whose testimony is included and the appendix page at which each witness's testimony begins. This was not done. Defendant's exhibits referenced in the table of contents do not include a concise description of the exhibit. Iowa R. App. P. 6.905(4)(c). Our mention of these failures to comply with rule 6.905 is not just nitpicking; "[r]ule compliance lightens the court's burden and promotes judicial efficiency because compliance begets uniformity, and uniformity eases the court's navigation through the thousands of briefs and appendices it reviews each year." *City of Monroe v. Nicol*, 898 N.W.2d 899, 901 (Iowa Ct. App. 2017).

5

presented.'" *Hutchison v. Shull*, 878 N.W.2d 221, 229-30 (Iowa 2016) (quoting *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996)).

> When reviewing a claim that substantial evidence does not support a district court finding, we are required to view the evidence in the light most favorable to the judgment and liberally construe the court's findings to uphold, rather than defeat, the result reached. Evidence supporting a district court finding is not insubstantial merely because we may draw a different conclusion from it. The crucial question in determining whether substantial evidence supports a district court finding is not whether the evidence would support a different finding, but whether the evidence supports the finding actually made.

*Id.* at 230 (citations omitted).

**B. Trespass.**

"One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other . . . ." *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 301 (Iowa 1994) (quoting Restatement (Second) of Torts § 158 (1964)), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111 (Iowa 2004). Where there is consent to enter, either express or implied, there can be no trespass. *See Alexander v. Med. Assocs. Clinic*, 646 N.W.2d 74, 76 (Iowa 2002) ("A 'trespasser' is one who has no legal right to be upon another's land and enters the land without the express or implied consent of the owner."); Restatement (Second) of Torts § 167. Consent occurs "where the plaintiff's conduct reasonably led the defendant to believe the defendant had authority for the actions taken with regard to the property." *Larson v. Great W. Cas. Co.*, 482 N.W.2d 170, 173 (Iowa Ct. App. 1992). Such consent "may be manifested by action or inaction and need not be communicated to the

actor." Restatement (Second) of Torts § 892, *cited with approval in Larson*, 482 N.W.2d at 173.

Thunder & Lightning alleged that Nagra, Sand, and Ogle committed trespass when they entered the Lime Lounge premises on the morning of January 21, 2016, in order to inspect the property. It is undisputed that the men entered and remained on the property on this date for approximately sixteen minutes. The question is whether they had consent to do so.

Substantial evidence shows the following: On January 14, 2016, Ogle sent a letter to Qualley, attorney for Thunder & Lightning. In it, among other things, Ogle informed Qualley that 435 Grand would be conducting an inspection of the leased property the following week:

> **4) Your landlord requires an inspection of the property, and will be present at the property on Thursday, January 21, at 10 a.m. for an inspection. It should take no longer than an hour.**
> Alterations of the property-Section 11 of the lease provides: "Tenant shall make no structural alterations or improvements without the prior written consent of the Landlord." Your landlord believes that you may have altered the property in violation of the terms of the lease and an inspection is necessary to confirm whether this is the case. The inspection should take no longer than an hour. Please make sure the landlord has full access to the building at that time.

Qualley responded to 435 Grand's stated intent to inspect the property in a letter to Ogle dated January 20, the day before the inspection was to take place. The letter states:

> Regarding an inspection, nobody will be at the property at your proposed date and time of January 21 at 10:00 a.m. and you do not have consent to an inspection at that time. The property is, and has been, for nearly the entire period of the lease, open to the public Monday thru Sunday at 4:00 p.m. Mr. Nagra is free to visit during any of the hours that we are open and view the inside of the building. I am aware that you have personally been in the business during

operating hours on at least one occasion and are aware that it is open to the public.

In addition to mailing the letter on January 20, Qualley attached it to an email he sent to Ogle at 5:07 p.m. the same day.

On the morning of January 21, Ogle arrived to inspect the property along with Santokh Nagra, 435 Grand's principal, and Peter Sand, another attorney for 435 Grand. The business was closed and not scheduled to open for another six hours. Sand found the front door locked. He went around to the side of the building to an outdoor patio area and found a side door locked. He proceeded to another side door and found it unlocked. The three entered the business. They remained on the premises for approximately sixteen minutes.

Ogle did not receive Qualley's mailed letter until January 22, the day after the inspection. Ogle did not see the Qualley's email until January 25 because it went to a dormant email address. Ogle emailed Qualley on January 21, shortly after the inspection. Ogle's email described the events that occurred during the inspection:

> I wanted to acknowledge the inspection of the subject property this morning. The door in the southwest corner of the building was open, so we entered from there. I assume you left that door unlocked for us. We left after about 20 minutes and made sure that all the doors were locked when we exited the building.

Qualley replied to Ogle's email later on January 21, reiterating that 435 Grand did not have permission to inspect the property and that it was reviewing security video to determine how access was gained, and stating Thunder & Lightning's intention to see 435 Grand "held fully responsible for your actions." Ogle did not responded to Qualley's January 20 email until January 25, 2016, when

he stated: "Your letter was not received until after we had inspected the property, per my earlier e mail.  Nor did I see this e mail."

In rejecting Thunder & Lightning's trespass claim, the district court found Nagra, Sand, and Ogle had apparent consent to enter and inspect the property and, therefore, no trespass occurred.  Although it recognized that Qualley sent Ogle a letter stating Thunder & Lightning did not consent to the inspection, the court found its objection was untimely:

> [Qualley]'s attempt to send an email after business hours the day before the inspection was to occur and mailing a letter that same day by regular mail is not a reasonable attempt to inform the defendants of [Thunder & Lightning]'s objection.  [Qualley] should have realized simply based upon the time that he sent the email and mailed the letter that there was a substantial probability that defendants would not receive [Thunder & Lightning]'s objection prior to the inspection.  Further, [Qualley] made no attempt to contact Ogle by telephone prior to January 21st to voice [Thunder & Lightning]'s objection to inspection or its proposal to allow the inspection during normal business hours.  Ogle testified that in his practice, involving commercial leases, he would contact a party directly by telephone to insure that party was aware of the tenant's position with regard to any inspection of the premises.  He would not have relied on an email sent after hours or a letter mailed the day before the inspection.
> The evidence further demonstrates that when the defendants arrived at the property they located an unlocked door at the rear of the building.  It was reasonable for them to assume [Thunder & Lightning] left it unlocked or opened it prior to the time of the inspection and had no desire to be present for the inspection.  The video evidence demonstrated that Sand walked along a concrete pathway next to the outdoor patio at the rear of the property.  The gate to the patio was open.  Sand walked up to the first door and it was locked.  He walked to the second door and found it was unlocked.  There were no extraordinary efforts by Sand to find an open door.

"[P]roperty law regards a lease as equivalent to a sale of the premises for the term of the lease, making the tenant both owner and occupier during the lease.'" *Harms v. City of Sibley*, 702 N.W.2d 91, 103 (Iowa 2005) (citation omitted);

*Bernet v. Rogers*, 519 N.W.2d 808, 811 (Iowa 1994) ("[A] tenant has an interest in the premises and has exclusive legal possession of it. This exclusive legal possession means the tenant, and not the landlord, is in control of the premises."). Accordingly, "a tenant's right to exclusive possession of the property suspends the landlord's right of entry . . . during the term of the lease." *Harms*, 702 N.W.2d at 103 (citation omitted); 49 Am. Jur. 2d Landlord and Tenant § 391 ("A landlord does not have an absolute right to enter a property he or she owns because the landlord conveys the right of possession to the tenant." (footnote omitted)). "The landlord becomes a trespasser if he enters upon the leased premises and without the consent of the tenant appropriates possession to himself before the expiration of the term." *Clark v. Strohbeen*, 181 N.W. 430, 433-34 (Iowa 1921); *accord* 49 Am. Jur. 2d Landlord and Tenant § 435 ("An unauthorized entry or intrusion by the landlord constitutes a trespass to the same extent as an entry or intrusion by a stranger, and the tenant may maintain an action of trespass against a landlord as well as against any other wrongdoer.").

"[A] conveyance of land, to which leasehold interests attach, passes all right, title, and interest of the grantor in said land, including the rights of the grantor in an unexpired lease *unless reserved by grantor*." *Clark*, 181 N.W. at 433 (emphasis added). "A landlord who desires to create a right to access his or her leased property must contract for that right." *Alta Vista Properties, LLC v. Mauer Vison Center, P.C.*, No. 13-0496, 2013 WL 6403078, at *4 (Iowa Ct. App. Dec. 5, 2013). Because nothing in the lease granted 435 Grand the right of entry to the leased property, these rights were not reserved, and Nagra, Sand, and Ogle had

no legal right to enter the property under the circumstances.[3]  Thunder & Lightning's failure to timely respond to 435 Grand's notice of inspection could not create a right of entry not reserved in the lease.

Furthermore, we disagree that Nagra, Sand, and Ogle had apparent authority to enter based on the circumstances surrounding the inspection.  *See* Restatement (Second) of Torts § 892 cmt. c ("Even when the person concerned does not in fact agree to the conduct of the other, his words or acts or even his inaction may manifest a consent that will justify the other in acting in reliance upon them. . . .  On the other hand, if a reasonable person would not understand from the words or conduct that consent is given, the other is not justified in acting upon the assumption that consent is given even though he honestly so believes; and there is then no apparent consent.").  It appears from the security video that the lights inside the establishment were off, indicating no one was inside.  When Sand tried to open the front door, he found it was locked.  Although Nagra, Sand, and Ogle are shown on the video with cell phones, none attempted to call Thunder & Lightning to inquire if anyone was coming to meet them for the inspection.  Instead, they entered the patio area of the premises without permission in their attempt to gain access to the building.  Sand tried and found a side door locked.  It was only when a third door near the rear of the building was found unlocked that the three were able to gain entry into the building.[4]  Once inside, they did not turn on the establishment's lights but instead conducted their inspection using the flashlight

---

[3] Although 435 Grand cites provisions of Iowa Code chapter 562A (2016) in support of its argument concerning a right of entry, that chapter concerns residential landlord-tenant relationships.

[4] The record before us does not reveal why the door was unlocked.

feature of one of the cell phones. Based on the circumstances, a reasonable person would not understand Thunder & Lightning's "silence and inaction" as intended to indicate consent. *Id.* ("This is true when the words or acts or silence and inaction, would be understood by a reasonable person as intended to indicate consent and they are in fact so understood by the other.").

Because substantial evidence establishes that Nagra, Sand, and Ogle did not have consent, apparent or otherwise, to enter the leased property, Thunder & Lightning has proved its trespass claims. We therefore reverse the district court order dismissing Thunder & Lightning's claims for trespass and conspiracy to commit trespass.

### C. Civil Conspiracy to Commit Trespass.

We conclude the acts complained of were performed pursuant to a conspiracy among defendants. Under the theory of civil conspiracy, a party may be held vicariously liable for acting in concert with another who undertakes wrongful conduct. *Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 172 (Iowa 2002). "The principal element of conspiracy is an agreement or understanding between two or more persons to effect a wrong against or injury upon another. It involves some mutual mental action coupled with an intent to commit the act which results in injury." *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977). In other words, in order for a civil conspiracy claim to be actionable, there must be wrongful conduct of a co-conspirator that is itself actionable. *See Wright*, 652 N.W.2d at 172*.* We likewise reverse the dismissal Thunder & Lightning's claim for conspiracy to civil commit trespass.

**D.  Summary.**

We reverse the order dismissing Thunder & Lightning's claims for trespass and civil conspiracy to commit trespass.  We remand the case to the district court for further proceedings to determine the amount of Thunder & Lightning's damages.

**III. Sanctions.**

Thunder & Lightning also appeals the order imposing sanctions on it for violating Iowa Rule of Civil Procedure 1.413.  Thunder & Lightning claims the district court abused its discretion in finding it failed to conduct a reasonable inquiry before initiating the contempt action.  It also claims the court abused its discretion in awarding sanctions in an amount that is "unsubstantiated by the facts."

**A.  Scope and Standard of Review.**

We review a district court's order imposing sanctions by writ of certiorari, "a procedure to test whether a lower board, tribunal, or court exceeded its proper jurisdiction or otherwise acted illegally."  *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009).

Our review of the district court's award of sanctions is for an abuse of discretion.  *See First Am. Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 744 (Iowa 2018).  An abuse of discretion occurs the district court exercises its discretion on clearly untenable grounds, for clearly untenable reasons, or to a clearly untenable extent.  *See id.*  An error in applying the law is clearly untenable.  *See id.*  Although our review is for an abuse of discretion, the district court's findings of fact are binding on us if supported by substantial evidence.  *See Barnhill*, 765 N.W.2d at 272.

## B. Discussion.

The Iowa Rules of Civil Procedure state that a signature on a motion certifies that

> counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation.

Iowa R. Civ. P. 1.413(1). If the court determines counsel has violated this rule, it may impose "an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee." *Id.* The primary purpose of the rule is to deter parties and counsel from filing frivolous pleadings, motions, or other papers, with a secondary purpose of compensating the party opposing the filing. *First Am. Bank*, 906 N.W.2d at 745. Another goal "is to maintain a high degree of professionalism in the practice of law." *Id.* at 746. The sanction imposed need not reflect a party's actual expenditures. *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012).

In determining the amount of the sanction to be imposed, the court must consider "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the . . . violation." *Id.* at 590 (alteration in original) (citation omitted). It is also encouraged to consider the factors set forth by the American Bar Association. *See id.*

At the close of trial on the trespass claims, Thunder & Lightning moved for rule to show cause, alleging 435 Grand violated a December 2016 court order concerning its claim for specific performance, which was among the claims tried to the court in April and June 2016. Following trial, the court dismissed Thunder & Lightning's claims for libel, fraudulent misrepresentation, and fraudulent nondisclosure, as well as the majority of its breach-of-contract claims. However, the court found 435 Grand breached the lease with regard to Thunder & Lightning's exclusive option to purchase the property. The court ordered 435 Grand to perform under the contract by allowing Thunder & Lightning to exercise the option to purchase under the lease. In December 2016, the court amended its order to provide Thunder & Lightning a credit of $32,400.00 on the $175,000.00 purchase price "provided [Thunder & Lightning] makes its January and February 2017 rental payments and the purchase of the building is completed by February 11, 2017." In its motion for rule to show cause, Thunder & Lightning alleged 435 Grand willfully violated that order by failing to satisfy an outstanding judgment against it before closing on the property, thereby depriving it of a clear title within the timeframe contemplated by the order.

The district court dismissed Thunder & Lightning's motion for rule to show cause after finding Thunder & Lightning failed to prove beyond a reasonable doubt that 435 Grand willfully violated a court order.[5] Specifically, the court found that before filing the motion for rule to show cause, Qualley never contacted Ogle to

---

[5] The outstanding judgment did not delay the real estate closing because the parties agreed to withhold sufficient money from the purchase payment to pay the judgment amount. Further, Ogle was in fact taking efforts to obtain a release of the judgment.

determine "what efforts he had undertaken to resolve the issue" and, had he done so, "he would have conveyed his efforts in satisfying the judgment." Because Thunder & Lightning and its attorney failed to make a reasonable inquiry of the facts prior to filing the motion for rule to show cause, the court, on its own motion, concluded that both Thunder & Lightning and Qualley, as its attorney, had violated Iowa Rule of Civil Procedure 1.413. The court gave the defendants ten days to suggest the sanctions it should impose on Thunder & Lightning and its attorney for this rule violation. The defendants requested that the court assess reasonable attorney fees and expenses as a sanction. The court ordered against Thunder & Lightning and its attorney, jointly and severally, to pay $720 in attorney fees to 435 Grand and Nagra and $400 in attorney fees to Ogle.

The court may cite and punish a party for contempt if that party willfully disobeys a court order. *See* Iowa Code § 598.23 (2017). Thunder & Lightning had the burden of demonstrating beyond a reasonable doubt that 435 Grand willfully violated the December 2016 order. *See Gimzo v. Iowa Dist. Ct.*, 561 N.W.2d 833, 835 (Iowa Ct. App. 1997). To show willful disobedience, there must be evidence that 435 Grand's conduct was "intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether [it] had the right or not." *Id.* (citation omitted).

The district court determined that 435 Grand's failure to provide clear title to the property on the closing date due to a $5000 outstanding judgment against it did not amount to willful disobedience of the December 2016 order, noting the steps Ogle undertook to investigate and resolve the matter. The court observed

that if Thunder & Lightning had contacted Ogle prior to filing the motion for rule to show cause, "he would have conveyed his efforts in satisfying the judgment," thus showing 435 Grand did not fail to provide clear title deliberately or in disregard of Thunder & Lightning's rights.[6]

Because Ogle's efforts to satisfy the outstanding judgment show 435 Grand's failure to satisfy the judgment was not willful, no basis exists for the contempt action. Substantial evidence supports the court's finding that Thunder & Lightning failed to make a reasonable inquiry before initiating the contempt action. The court did not abuse its discretion in awarding sanctions against Thunder & Lightning and Qualley. Nor did it abuse its discretion in determining the amount of the sanction. The court awarded the defendants no more than necessary to compensate them for the attorney fees incurred in defending against the motion. This amount—$1120—is not unreasonable. Accordingly, the district court did not abuse its discretion when it sanctioned Thunder & Lightning for violating rule 1.413.

### IV. Appellate Attorney Fees.

The defendants request an award of appellate attorney fees. Attorney fees are generally not recoverable absent express statutory authorization. *See Lee v. State*, 906 N.W.2d 186, 197 (Iowa 2018). In addition to being express, the statutory authorization "must come clearly within the terms of the statute." *See Brandstad v. State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 294 (Iowa 2015) (citation omitted). Rule 1.413 allows the court to order a party to pay reasonable expenses incurred because of the filing of the motion, pleading, or other paper

---

[6] The court also noted that there was no requirement in the court's December 13, 2016 order that clear title had to be conveyed at the time of closing.

signed in violation of the rule, including a reasonable attorney fees. It does not expressly authorize an award of appellate attorney fees. Rather, the award of attorney fees specifically relates to the expense of litigating the frivolous filing—here, the contempt action—in district court. The district court's dismissal of the contempt action was not appealed. Because the attorney fees that may be awarded under rule 1.413 relate specifically to litigation of those papers signed in violation of rule 1.413 rather than to the fees associated with litigating rule 1.413 sanctions, we find no basis for awarding 435 Grand appellate attorney fees under the rule. *See Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 845 (Iowa 2009) (noting a statutory provision authorizing an award of attorney fees related to district court proceedings does not imply that appellate attorney fees could also be recovered).

**REVERSED AND REMANDED; WRIT ANNULLED.**